**NEPHI CITY, a municipal corporation, Plaintiff and Appellant,**

v.

**Dee C. HANSEN, State Engineer of the State of Utah; and Utah State Division of Wildlife Resources, Defendants and Appellees.**

No. 860614.

Supreme Court of Utah.

Aug. 31, 1989.

Donald J. Eyre, Nephi, for plaintiff and appellant.

R. Paul Van Dam, Michael M. Quealy, Salt Lake City, for defendants and appellees.

ZIMMERMAN, Justice:

Plaintiff Nephi City appeals from an order denying its motion for summary judgment and granting the motion of defendant Dee C. Hansen, State Engineer, and defendant Utah State Division of Wildlife Resources for summary judgment. The summary judgment upheld the State Engineer's decision rejecting Nephi City's applications to change the points of diversion of four claimed water rights. The State Engineer rejected the applications on the grounds that the four water rights in question had been forfeited through nonuse under section 73-1-4 of the Code. Utah Code Ann. § 73-1-4 (1980) (amended 1987 & 1988). Nephi City claims that a municipal corporation's water rights cannot constitutionally be forfeited through nonuse under article XI, section 6 of the Utah Constitution. It contends that to the extent that section 73-1-4 provides for such a forfeiture, it is unconstitutional. We reject Nephi City's assertions and affirm the district court.

The material facts are not in dispute. During the first half of this century, Nephi City acquired four nonconsumptive water rights on Salt Creek in Juab County. The beneficial use to which they were to be put was power generation. Nephi City used these water rights to generate electricity until the early 1950s, when a flood on Salt Creek destroyed the diversion and conveying works. From the flood until the early 1980s, these water rights were not beneficially used by Nephi City.

In 1982, Nephi City proposed to construct a new hydroelectric facility. Pursu-

ant to this plan, it filed four applications with the State Engineer to permanently change the points of diversion specified for its four water rights. *See* Utah Code Ann. § 73–3–3 (1980) (amended 1986 & 1987). The change applications were protested by the Utah State Division of Wildlife Resources. *See* Utah Code Ann. § 73–3–7 (1980) (amended 1987 & 1988). After holding a hearing on the applications in April of 1983, the State Engineer rejected each of the four on the ground that because the water rights had not been used for a period exceeding five years, they had been forfeited under the terms of section 73–1–4 of the Code.[1] Because there were no subsisting water rights, there could be no change in their points of diversion.

Nephi City brought this action in the district court for review of the State Engineer's decision pursuant to section 73–3–14 of the Code. *See* Utah Code Ann. § 73–3–14 (1980) (amended 1986 & 1987). It claimed, inter alia, that if section 73–1–4 worked a forfeiture of its water rights, that section was unconstitutional because it conflicted with article XI, section 6 of the Utah Constitution, which prohibits any municipal corporation from "directly or indirectly" disposing of any water rights "owned or controlled" by it.[2] The parties submitted the matter on cross-motions for summary judgment. The district court granted the motion of the State Engineer and the Utah State Division of Wildlife Resources for summary judgment. It concluded that there were no disputed issues of material fact, that the State Engineer was correct in concluding that the water rights had been forfeited by nonuse under section 73–1–4 of the Code, and that there is no conflict between article XI, section 6 and section 73–1–4 because the constitution only prohibits the voluntary, intentional disposition of water rights, whereas a forfeiture under section 73–1–4 is involuntary. Nephi City appeals from that order.

In essence, Nephi City repeats here the arguments made to the district court. Because there is no factual dispute before us, the question is purely one of law: whether section 73–1–4 works a forfeiture and whether such a forfeiture is in violation of article XI, section 6.

In reviewing the trial court's conclusions of law, we review them for correctness and accord them no particular deference. *E.g., Ron Case Roofing and Asphalt Paving, Inc. v. Blomquist,* 773 P.2d 1382, 1385 (Utah 1989); *Atlas Corp. v. Clovis Nat'l Bank,* 737 P.2d 225, 229 (Utah 1987); *Scharf v. BMG Corp.,* 700 P.2d 1068, 1070 (Utah 1985).

■ There is little question that section 73–1–4 works a forfeiture of Nephi City's

---

1. Section 73–1–4 of the Code provides in pertinent part:

When an appropriator or his successor in interest shall abandon or cease to use water for a period of five years the right shall cease and thereupon such water shall revert to the public, and may be again appropriated as provided in this title, unless before the expiration of such five-year period the appropriator or his successor in interest shall have filed with the state engineer a verified application for an extension of time, not to exceed five years, within which to resume the use of such water and unless pursuant to such application the time within which such nonuse may continue is extended by the state engineer as hereinafter provided....

....

Such applications for extension shall be granted by the state engineer for periods not exceeding five years each, upon a showing of reasonable cause for such nonuse.... [T]he holding of a water right without use by a municipality ... to meet the reasonable fu-

ture requirements of the public, shall constitute reasonable cause for nonuse.

Utah Code Ann. § 73–1–4 (1980) (amended 1987 & 1988).

2. Article XI, section 6 of the Utah Constitution provides:

No municipal corporation, shall directly or indirectly, lease, sell, alien or dispose of any waterworks, water rights, or sources of water supply now, or hereafter to be owned or controlled by it; but all such waterworks, water rights and sources of water supply now owned or hereafter to be acquired by any municipal corporation, shall be preserved, maintained and operated by it for supplying its inhabitants with water at reasonable charges: Provided, That nothing herein contained shall be construed to prevent any such municipal corporation from exchanging water rights, or sources of water supply, for other water rights or sources of water supply of equal value, and to be devoted in like manner to the public supply of its inhabitants.

Utah Const. art. XI, § 6.

four nonconsumptive water rights. These rights were unused for about thirty years. The statute provides, "When an appropriator or his successor in interest shall abandon or cease to use water for a period of five years the right shall cease and thereupon such water shall revert to the public...." Utah Code Ann. § 73–1–4.[3] On the other hand, it permits the State Engineer, upon a showing of "reasonable cause for such nonuse," to extend the time, not to exceed five years, to resume use of the water if application is made before the expiration of the initial period. *Id.* And the statute specifically provides that "the holding of a water right without use by any municipality ... to meet the reasonable future requirements of the public, shall constitute reasonable cause for such nonuse." *Id.* However, no such extension was sought by or granted to Nephi City. Therefore, under the plain terms of section 73–1–4, Nephi City's water rights were forfeited for nonuse by operation of law.

▪ The next question is whether section 73–1–4 is inconsistent with article XI, section 6 of the Utah Constitution. That provision states in pertinent part:

> No municipal corporation, shall directly or indirectly, lease, sell, alien or dispose of any waterworks, water rights, or sources of water supply now, or hereafter to be owned or controlled by it; but all such waterworks, water rights and sources of water supply now owned or hereafter to be acquired by any municipal corporation, shall be preserved, maintained and operated by it for supplying its inhabitants with water at reasonable charges....

Utah Const. art. XI, § 6.[4] The essential question raised by Nephi City is whether this language bars *all* transfers, voluntary or involuntary, or whether it is limited to voluntary transfers, as the State Engineer and district court implicitly held. We conclude that article XI, section 6 is directed against voluntary transfers only.

Nephi City's argument is grounded on the language in article XI, section 6 that a municipality may not "directly or indirectly ... *dispose* of any ... water rights." *Id.* (emphasis added). Nephi City claims that this term is broad enough to cover any disposition of water rights, whether voluntary or involuntary. The difficulty with this line of reasoning is that it ignores settled rules of statutory construction. In construing constitutional as well as statutory provisions, it is to be assumed that the words used were chosen advisedly, and terms should be given an interpretation and an application in accord with their commonly understood meaning. *Hansen v. Owens,* 619 P.2d 315, 317 (Utah 1980) (constitutional construction), *overruled on other grounds, American Fork City v. Crosgrove,* 701 P.2d 1069, 1075 (Utah 1985); *Grant v. Utah State Land Bd.,* 26 Utah 2d 100, 102, 485 P.2d 1035, 1036 (1971) (statutory construction). But where general terms follow specific ones, the rules of construction, including *noscitur a sociis,* "it is known from its associates," and *ejusdem generis,* "of the same kind," require that the general terms be given a meaning that is restricted to a sense analogous to the preceding specific terms. *In re Disconnection of Certain Territory,* 668 P.2d 544, 547–48 (Utah 1983); *see also Heathman v. Giles,* 13 Utah 2d 368, 369–70, 374 P.2d 839, 840 (1962). Here the term "dispose" is preceded by the terms "lease," "sale," and "alien." These all refer to the voluntary transfer of water rights. Since the general term "dispose" follows these specific terms, it must be given a construction consistent with these terms, i.e., as pertaining to the voluntary transfer of water rights. Therefore, we construe article XI, section 6 as barring any voluntary transfer, directly or indirectly, of water rights, but not involuntary transfers. So construed, this provision is not in conflict with section 73–1–4 of the Code.

It is worth noting that our interpretation of article XI, section 6 is supported by reference to the legal environment out of which article XI, section 6 arose and the practical implications of applying this provision to involuntary transfers. *See P.I.E.*

---

3. See *supra* note 1 for other pertinent provisions in section 73–1–4 of the Code.

4. See *supra* note 2 containing article XI, section 6 in its entirety.

*Employees Fed. Credit Union v. Bass,* 759 P.2d 1144, 1146 (Utah 1988); *State v. Betensen,* 14 Utah 2d 121, 122, 378 P.2d 669, 669 (1963).

Statutory involuntary forfeiture has been a basic part of Utah water law since 1880. Chapter 20, section 9 of *Laws of Utah 1880* stated in pertinent part: "A continuous ... failure to use any right to water, for a period of seven years, at any time after the passage of this Act, shall be held to be an abandonment and forfeiture of such right...." 1880 Utah Laws ch. XX, § 9. This forfeiture provision was embodied in the *Compiled Laws of Utah 1888* and was in effect when the Utah Constitution was adopted in 1896. II 1888 Utah Compiled Laws § 2783. It must be presumed that the framers of the constitution were aware of this forfeiture provision in the then-existing statutory law. If the framers had intended to fundamentally change the existing water law by abrogating forfeiture by municipalities, it could easily have been done. However, there is no indication of such an intention anywhere in the constitution. Certainly the use of the words "indirect" and "dispose of" in article XI, section 6 cannot reasonably be construed as such a declaration of intent.

Nephi City argues that under section 73–1–4 it is too easy for a municipality to inadvertently forfeit its water rights through nonuse by overlooking the need to file an application for an extension, as permitted by the statute. If this is a real problem, the legislature is fully capable of crafting a remedy. The remedy is not to rigidify municipal water rights, with attendant unforeseen consequences, by holding that municipal rights cannot be forfeited.

We have considered Nephi City's remaining arguments and find them to be without merit. The judgment of the district court is affirmed.

HALL, C.J., HOWE, Associate C.J., and STEWART and DURHAM, JJ.