2011 UT 84

**STATE of Utah, Plaintiff and Respondent,**

v.

**Lonnie C. ARAVE, Defendant and Petitioner.**

No. 20090880.

Supreme Court of Utah.

Dec. 30, 2011.

Mark L. Shurtleff, Att'y Gen., Kenneth A. Bronston, Asst. Att'y Gen., Salt Lake City, for plaintiff.

Randall W. Richards, Brittany R. Brown, Ogden, for defendant.

Justice LEE, opinion of the Court:

¶ 1 Lonnie Arave approached an eleven-year-old boy in their Ogden neighborhood and offered to pay him $20 if he would agree to let Arave perform oral sex on him. At trial, Arave moved to dismiss a charge of attempted sodomy on a child, asserting that his conduct amounted only to the offense of solicitation and could not sustain a conviction of attempt. The district court denied the motion, and Arave was convicted on the attempt charge. A divided court of appeals affirmed that decision.

¶ 2 Arave now challenges his conviction on the ground that at most he was guilty of solicitation, a lesser offense than attempt. He argues that (1) solicitation cannot equate to attempt without running afoul of the doctrine set forth in State v. Shondel, 22 Utah 2d 343, 453 P.2d 146 (1969); and (2) he is not guilty of attempt because solicitation is not a "substantial step" toward commission of the crime.

¶ 3 We granted Arave's petition for certiorari, and we now affirm in part and reverse in part. We uphold the court of appeals' decision rejecting Arave's Shondel argument, albeit on different grounds. Although we agree that statutes criminalizing attempt and solicitation do not run afoul of the Shondel doctrine, we disagree with the court of appeals' conclusion that the solicitation statute encompasses only the solicitation of another person to commit an offense. We conclude instead that solicitation of a potential victim also falls within the ambit of the solicitation statute. Further, we hold that the act of solicitation alone is not enough to constitute a substantial step—and thereby an attempt—to commit a crime. Accordingly, we reverse the court of appeals insofar as it upheld Arave's conviction for attempt.

I

¶ 4 On May 10, 2006, Lonnie Arave was at home in his Ogden neighborhood when he noticed D.B., an eleven-year-old boy, riding up and down the street on his skateboard. When he saw D.B., Arave went outside, hopped on his bicycle, and rode up to the boy. Once he caught up with D.B., Arave stopped the bicycle about two feet in front of him, blocking his way. Arave then offered D.B. $20 to allow him to perform oral sex on the boy, adding that he wanted to "lick [D.B.] from head to toe." When D.B. did not respond, Arave apologized for "grossing him out" and asked D.B. not to tell anyone about their encounter, but reminded him to "think about it, $20."

¶ 5 Immediately following this exchange with Arave, D.B. rode home on his skateboard in tears. D.B.'s mother discovered what happened and called the police, who apprehended Arave later that same day. Officials later discovered that Arave had fixated on and fantasized about performing oral sex on D.B. for approximately one month before the encounter.

¶ 6 Later in May, Ogden prosecutors charged Arave with attempted sodomy on a

child,[1] a first degree felony.[2]  That same month, Arave appeared at a preliminary hearing where he and the prosecution stipulated to the underlying facts.  The parties reappeared before the magistrate in June 2006 to argue the question whether there was probable cause to bind Arave over for trial on the charge of attempted sodomy on a child.  Arave's counsel challenged the attempt charge on the ground that, at most, the facts sustained a charge on a count of solicitation of sodomy on a child, then a second degree felony.  Following argument, the magistrate ordered Arave bound over for trial on the more serious charge of attempted sodomy on a child.

¶ 7 Arave was tried before a jury on November 28 and 29, 2006.  At the close of the State's case-in-chief, Arave moved the court to (1) dismiss the attempt charge for lack of evidence and (2) enter a conviction of a lesser offense—solicitation to commit sodomy on a child.[3]  Arave argued that the State had failed to prove any elements of attempted sodomy on a child beyond his initial solicitation of D.B. Pursuant to the *Shondel* doctrine, Arave also asserted that the statutes criminalizing attempted sodomy on a child and solicitation to commit sodomy on a child were wholly duplicative of each other and therefore he was eligible for conviction only on the lesser offense of solicitation.

¶ 8 The trial court denied the motion but instructed the jury on both attempted sodomy on a child and solicitation to commit sodomy on a child as a lesser included offense.  Following deliberation, the jury returned a guilty verdict for the more serious offense of attempted sodomy on a child.

Arave subsequently filed a posttrial motion to arrest judgment rearguing his two claims made at the close of trial, which the court denied.

¶ 9 On appeal to the Utah Court of Appeals, Arave again raised the same issues.  A divided court of appeals affirmed the decisions of the trial court, concluding that the attempt and solicitation statutes did not implicate the *Shondel* doctrine and that the trial court did not err in denying Arave's motion to dismiss for insufficient evidence.  *State v. Arave*, 2009 UT App 278, ¶ 17, 220 P.3d 182.

¶ 10 The court of appeals majority rejected Arave's *Shondel* argument, reasoning that solicitation is limited to situations where a defendant solicits a third party to perpetrate a crime and thus does not encompass the conduct at issue here.  *Id.* ¶ 11.  As to the sufficiency of the evidence, the majority held that that by soliciting D.B., Arave took a substantial step in furtherance of his intent to sodomize the victim and thus could be found guilty of attempted sodomy on a child.  *Id.* ¶ 14.

¶ 11 Writing in dissent, Judge Orme concluded that Arave's actions "[fell] short of an attempt to commit sodomy," characterizing them as "more like a pre-attempt, a testing of the waters to see if attempting an act of sodomy would likely be worthwhile."  *Id.* ¶ 19 (Orme, J., dissenting).  Judge Orme ultimately believed that Arave's encounter with D.B. was "simply not a substantial step towards commission of the crime," and therefore the case should have been "remanded for the trial court to enter a conviction of

---

1.  It has been our practice to cite to the annotated version of the Utah Code. Today we end that convention.  Going forward, we will cite to the official, unannotated version of the code.  Furthermore, we will cite exclusively to the current version of the code unless the statute has been amended since the events at issue occurred.  In light of these changes, we will no longer indicate a date in code citations when referring to provisions in force at the time of publication of our opinion.  Any citations to prior versions of the code will be indicated with a parenthetical date.

2.  Utah Code §§ 76–5–403.1, 76–4–101. Because the elements of the crimes of sodomy on a child, attempted sodomy on a child, and solicitation to

commit sodomy on a child have not changed since May 2006, we cite to the current version of the code for convenience.  However, we note that following Arave's conviction in 2006, the penalty for solicitation to commit sodomy on a child was increased to a first degree felony, *id.* § 76–4–204(1)(d)(iii) (2008), instead of the second degree felony he would have faced at the time of the offense, *id.* § 76–4–204(2) (2006).

3.  Because Arave is subject to the 2006 version of the solicitation statute, however, he would face a second degree felony if a conviction of solicitation to commit sodomy on a child were entered against him.  *Supra* ¶ 6 note 2.

solicitation to commit sodomy on a child." *Id.* ¶ 27.

## II

¶ 12 Our decision in *State v. Shondel*, 22 Utah 2d 343, 453 P.2d 146 (1969), preserves the equal protection of the laws by requiring criminal statutes to be "written so that ... the exact same conduct is not subject to different penalties depending upon which of two statutory sections a prosecutor chooses to charge." *State v. Williams*, 2007 UT 98, ¶ 10, 175 P.3d 1029 (alteration in original) (internal quotation marks omitted). Where statutes "define two crimes having precisely the same elements with different penalties,"[4] *Shondel* permits a defendant to be sentenced only on the lesser offense. This requirement is triggered only where two offenses are "wholly duplicative" of each other.[5]

¶ 13 To resolve the *Shondel* issue here, we must examine the text of the attempt and solicitation statutes to determine whether they are "wholly duplicative" of each other.[6] If each statute "requires proof of some fact or element not required to establish the other," there is no *Shondel* problem and thus no basis for foreclosing Arave's conviction on the attempt charge.[7]

¶ 14 The court of appeals saw no *Shondel* problem in the interaction between the crimes of solicitation and attempt. It based this decision on the notion that solicitation simply does not apply to the facts of this case, since in its view "solicitation is confined to those situations where a defendant solicits a *third party* to commit a felony ... while attempt[ ] ... is limited to situations where the defendant directly attempts to commit [a felony]." *Arave*, 2009 UT App 278, ¶ 11, 220 P.3d 182.

¶ 15 We reject the court of appeals' rationale but affirm its ultimate conclusion. It is undoubtedly true that most solicitation crimes do not involve solicitation of victims, but of third-party perpetrators. As we read the Utah solicitation statute, however, it seems clear that this offense also encompasses solicitation of a victim who lacks capacity to consent.

¶ 16 An actor commits solicitation "if with intent that a felony be committed he solicits, requests, commands, offers to hire, or importunes another person to engage in specific conduct that ... would be a felony or would cause the other person to be a party to the commission of a felony." Utah Code § 76–4–203(1). This language leaves ample room for the crime of solicitation of a victim who lacks capacity to consent, as the conduct the victim is requested to engage in "would be a felony" or, alternatively, the victim would "be a party to the commission of a felony."

¶ 17 We find it significant that the crime of child sodomy requires two parties—an adult perpetrator and a child victim. In this regard, both parties' conduct can be said to be a component of the felony in question and both can be said to be a "party" to the felony. It is no answer to say that the victim's component of or participation in the felony would not make him criminally liable, as the statute goes on to clarify that "[i]t is not a defense [to the crime of solicitation] that the person solicited by the actor ... does not agree to act upon the solicitation ... [or] *is not criminally responsible* for the felony solicited." *Id.* § 76–4–203(3)(a), (d) (emphasis added).

¶ 18 We acknowledge that our statute is less than crystal clear on this question. Our construction, however, finds additional support in precedent from other jurisdictions that have adopted a Model Penal Code-based definition of solicitation. The Pennsylvania courts, for example, have consistently upheld solicitation convictions of defendants who solicit victims of child sodomy, prostitution, or other crimes where a victim lacks the capaci-

---

4. *State v. Clark*, 632 P.2d 841, 844 (Utah 1981) (citing *Shondel*, 22 Utah 2d 343, 453 P.2d 146).

5. *State v. Fedorowicz*, 2002 UT 67, ¶ 49, 52 P.3d 1194 (quoting *State v. Bryan*, 709 P.2d 257, 263 (Utah 1985)).

6. *See id.* (internal quotation marks omitted).

7. *Clark*, 632 P.2d at 844.

ty to consent.[8] These courts convincingly conclude that "[t]he statute does not require criminal behavior by the person solicited. What it requires is complicity, or participation, in the commission of a crime." *Commonwealth v. Cauto*, 369 Pa.Super. 381, 535 A.2d 602, 606 (1987). In the case of solicitation of undercover police officers, the Pennsylvania courts explained that those "officers, had they acceded to the prostitutes' advances, would not have been guilty of engaging in sexual activity as a business—the crime of prostitution—but they would have acted as the necessary partners without whom the crime of prostitution cannot be committed." *Id.* at 607.

¶ 19 We find this analysis persuasive. The Utah solicitation statute does not require criminal behavior or liability on the part of the person solicited. It does require, however, the solicitor to ask the solicitee to engage in conduct which, if carried out "would cause the other person to be a party to the commission of the felony." UTAH CODE § 76–4–203(1). Thus, D.B. would not have been guilty of the crime of sodomy of a child if he had acceded to Arave's advances. But he would have acted as a necessary partner without whom that crime could not have been committed, and that is enough under the Utah solicitation statute.

¶ 20 Another provision of the Utah code confirms this conclusion. Our legislature has enacted a statute that criminalizes the use of the Internet to solicit or entice a minor to engage in unlawful sexual activity. This statute expressly contemplates that solicitation may sometimes extend to the solicitation of a victim of a child sex crime. As originally drafted, it defined Internet enticement as follows:

A person commits enticement of a minor over the Internet when, not amounting to an attempt, conspiracy, or solicitation under Section 76–4–101, 76–4–201, or 76–4–203, the person knowingly uses a computer to solicit, seduce, lure, or entice, or attempt to solicit, seduce, lure, or entice a minor or a person the defendant believes

to be a minor to engage in any sexual activity which is a violation of state criminal law.

*Id.* § 76–4–401(2)(a) (2001). Because this statute criminalizes online solicitation of a victim of a child sex crime even when the defendant's conduct falls short of "an attempt, conspiracy, or solicitation under Section 76–4–101, 76–4–201, or 76–4–203," there must be some circumstances in which solicitation of such a victim would amount to solicitation under section 76–4–203. The implication of this statute could hardly be clearer.

¶ 21 Thus, we reject the court of appeals' conclusion that the crime of solicitation requires the involvement of a solicitee-perpetrator (and not a victim). There are at least some circumstances where the elements of solicitation may be satisfied without the involvement of a solicitee-perpetrator, such as the case before us here, in which the solicitee is a victim whose participation is an element of the underlying offense.

¶ 22 That said, we nonetheless agree with the court of appeals' conclusion that there is no *Shondel* problem precluding invocation of the attempt statute in this case. Both attempt and solicitation require proof of some fact or element not required to establish the other. Criminal attempt requires an actor to make a "substantial step" toward commission of a crime, *id.* § 76–4–101(1)(a), whereas criminal solicitation requires only the contemplation of a felony and the invitation of another party to participate in the offense, *id.* § 76–4–203(1). On the other hand, where solicitation requires the involvement of another party, attempt does not. Accordingly, on their terms the statutes do not run afoul of *Shondel* and Arave was eligible to be charged with both the first degree felony of attempt and the second degree felony of solicitation.

### III

¶ 23 The court of appeals also rejected Arave's alternative ground for challenging

---

**8.** *See Commonwealth v. Wilson,* 296 Pa.Super. 264, 442 A.2d 760, 762, *aff'd* 498 Pa. 529, 447 A.2d 1381 (1982) (solicitation of prostitution with undercover police officers); *Commonwealth v. Cauto,* 369 Pa.Super. 381, 535 A.2d 602 (1987) (solicitation of child sex abuse).

his conviction of attempt, based on the alleged insufficiency of the evidence supporting this offense. On this issue, the court of appeals majority concluded based on the "undisputed facts presented at trial" that Arave took a "substantial step in furtherance of his specific intent to sodomize D.B." *State v. Arave*, 2009 UT App 278, ¶ 14, 220 P.3d 182.

¶ 24 We review the court of appeals' decision for correctness, applying the same standard of review applicable in the court of appeals in its review of the district court's decision.[9] The court of appeals affirmed the district court's denial of Arave's motion to dismiss for insufficient evidence at the conclusion of the State's case-in-chief. Such a motion "requires the trial court to determine whether the defendant must proceed with the introduction of evidence in his defense." *State v. Hamilton*, 2003 UT 22, ¶ 40, 70 P.3d 111 (internal quotation marks omitted). If the State fails to produce "believable evidence of all the elements of the crime charged, the trial court must dismiss the charges." *Id.* (citations omitted) (internal quotation marks omitted). If, on the other hand, "upon reviewing the evidence and all inferences that can be reasonably drawn from it, the court concludes that some evidence exists from which a reasonable jury could find that the elements of the crime had been proven beyond a reasonable doubt, [the appellate court] will uphold the denial of a motion to dismiss." *Id.* ¶ 41 (internal quotation marks omitted).

¶ 25 Although an appellate court views the facts of the case in the light most favorable to the jury's verdict, it gives no such deference to the trial court's decision on a motion to dismiss. A trial court's grant or denial of a motion to dismiss "is a question of law ... [the court] review[s] for correctness, giving no deference to the decision of the trial court." *Id.* ¶ 17 (internal quotation marks omitted).[10]

¶ 26 In light of this standard and for the reasons below, we hold that Arave's solicitation of sodomy on a child, without more, could not constitute a substantial step toward the commission of that felony. Thus, the court of appeals erred in affirming the trial court's denial of Arave's motion to dismiss, and we accordingly reverse.

¶ 27 Solicitation alone cannot constitute a substantial step toward the commission of a crime. Were it otherwise, any actor who solicits a third party to participate in felony conduct would face the potential of being charged with attempt to commit the proposed felony instead of just solicitation. This result would obviate the crime of solicitation and introduce *Shondel* concerns.[11]

¶ 28 We cannot read the elements of attempt in a manner that would swallow the crime of solicitation. It is our "duty to give effect, if possible, to every word of [a] statute." *State v. Morrison*, 2001 UT 73, ¶ 11, 31 P.3d 547 (internal quotation marks omitted). "[A]ny interpretation which renders parts or words in a statute inoperative or superfluous is to be avoided." *Id.* (internal quotations marks omitted). Moreover, we have a "duty to construe a statute whenever possible so as to ... save it from constitutional conflicts or infirmities." *Id.* ¶ 12 (al-

---

9. *See State v. Baker*, 2010 UT 18, ¶ 7, 229 P.3d 650 (we review the court of appeals' decision "for correctness, giving no deference to its conclusions of law"); *Hutchings v. State*, 2003 UT 52, ¶ 11, 84 P.3d 1150 ("On a writ of certiorari, we ... apply the same standard of review used by the court of appeals") (internal quotation marks omitted).

10. Because we ultimately conclude that the court of appeals erred in affirming the denial of Arave's motion to dismiss, we need not answer, and therefore do not reach, the question whether Arave's posttrial motion to arrest judgment was likewise denied in error.

11. The state concedes as much in its briefing, acknowledging that we would likely run afoul of the *Shondel* doctrine if we concluded that an actor's direct solicitation of a vulnerable person for sex without further action constitutes an attempt. To avoid such a *Shondel* problem, the state proposes that we conclude that the offense of solicitation does not include soliciting a child victim. We reject this conclusion as it contravenes the text of the solicitation statutes. As discussed above, criminal solicitation is not solely limited to solicitation of perpetrators of crime, but also extends to the solicitation of victims who participate in crimes but lack the legal capacity to consent.

teration in original) (internal quotation marks omitted).

¶ 29 With this in mind, the crime of attempt must be construed to require something more than mere solicitation. Both the attempt and solicitation statutes require intent to commit a specific offense.[12] Yet unlike solicitation, which requires only reaching out to a third party with the intent to commit a felony, attempt requires something more—a "substantial step toward commission of the crime." [13]

¶ 30 The "mere intent to violate a … criminal statute is not punishable as an attempt unless it is also accompanied by significant conduct." *United States v. Resendiz–Ponce*, 549 U.S. 102, 106, 127 S.Ct. 782, 166 L.Ed.2d 591 (2007). Moreover, "attempt … connote[s] action rather than mere intent" and an "overt act … constitutes a substantial step toward completing the offense." *Id.* at 107, 127 S.Ct. 782 (internal quotation marks omitted). We likewise have defined "substantial step" as something "more than mere preparation";[14] it is a tangible step toward commission of a crime that "transcends intent, yet fails to culminate in its planned accomplishment." [15]

¶ 31 Thus, the "substantial step" required for the crime of attempt must be something more than a solicitation. The question for our review is whether there was credible evidence that Arave's conduct rose to this level. The court of appeals majority thought that it did, since it concluded that Arave "trapp[ed]" D.B. "in a physical space on the street" when he rode up to the boy and stopped the bicycle mere feet in front of him. *Arave*, 2009 UT App 278, ¶ 14, 220 P.3d 182. The majority then reasoned that, "had D.B. 'consented [to Arave's advances],' the sodomy would have occurred," and therefore Arave took a substantial step toward sodomizing D.B. *Id.*

¶ 32 We disagree. We accept the factual finding underlying the court of appeals' conclusion—that Arave saw D.B. riding his skateboard, traveled to a place in the road where his skateboarding path would lead him, and stopped at that place in a way that required D.B. to stop or change course to get around him. In this sense, Arave may have "blocked" D.B.'s progress on his chosen path. But it is inaccurate to say that Arave "trapped" D.B. in a way that prevented him from getting away. Without that additional preventive action—moving to block D.B.'s escape, take his skateboard, or otherwise restrain him—Arave did nothing beyond what most any defendants would do when committing a crime of solicitation.

¶ 33 In practice, a face-to-face solicitor would necessarily have to find a way to confront or face the person being solicited. Doing so typically would put the solicitor in the solicitee's way, in the sense that if the solicitor doesn't move the solicitee would have to move or change course to end the face-to-face confrontation. Thus, although Arave in some way stood in his victim's path, this act was no different from a typical solicitation and therefore could not constitute a "substantial step" of attempt.

¶ 34 Arave's other purported "substantial steps" are likewise in line with a garden-

---

12. *Compare State v. Jones*, 2002 UT 01, ¶ 9, 44 P.3d 658 (noting that attempt requires specific intent), *with* Utah Code § 76–4–203(1) ("An actor commits criminal solicitation if with *intent that a felony be committed,* he solicits" …. (emphasis added)).

13. Utah Code § 76–4–101(1)(a); *see also* Model Penal Code § 5.01(1)(c) (defining "criminal attempt" to include "an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime").

14. *State v. Johnson*, 821 P.2d 1150, 1157 (Utah 1991) (holding that a wife's purchase of counterfeit methamphetamine to poison her husband did not constitute a substantial step toward committing the murder because it did not go beyond "mere preparation").

15. *Jones*, 2002 UT 01, ¶ 9, 44 P.3d 658 (internal quotation marks omitted). We have previously found "substantial steps" toward the commission of a felony where individuals lit a mattress on fire in an attempted arson, *Tillman v. Cook*, 855 P.2d 211, 220 (Utah 1993), administered toxic substances to their spouse in an attempted murder, *Johnson*, 821 P.2d at 1160, entered a home with sawed-off shotguns in an attempted robbery, *State v. Hickman*, 779 P.2d 670, 671–72 (Utah 1989) (per curiam), and accosted a victim with a knife and club in an aggravated robbery, *State v. Cantu*, 750 P.2d 591, 593–94 (Utah 1988).

variety solicitation. The record indicates that Arave fixated on his victim for a time, fantasized about him, and watched him skateboard for long enough to decide how and where to confront him. But any solicitor would have to identify a potential solicitee and likely would have to spend time fixating on how and where to solicit him. If we deem Arave's acts as rising above solicitation and constituting attempt, we risk erasing the line between the two crimes in most instances.

¶ 35 We therefore conclude that there was no credible evidence at trial of a substantial step beyond mere solicitation and accordingly reverse the court of appeals' affirmance of Arave's motions to dismiss and to arrest judgment. The undisputed evidence presented to the trial court indicated that, at most, Arave was guilty of solicitation of sodomy on a child.

### IV

¶ 36 For these reasons, the court of appeals erred in affirming the trial court's denial of Arave's motion to dismiss. We accordingly reverse and remand the case to the trial court for further proceedings consistent with this opinion.

Justice LEE authored the opinion of the Court, in which Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice PARRISH, and Justice NEHRING joined.