2012 UT 30

Kent S. TURNER, Plaintiff
and Appellant,

v.

STAKER & PARSON COMPANIES, a
Utah corporation, and Atlas Engineer-
ing, L.L.C., a Utah limited liability com-
pany, Defendants and Appellee.

No. 20110275.

Supreme Court of Utah.

May 15, 2012.

David M. Kono, Joshua L. Lee, Salt Lake City, for appellant.

George W. Burbidge II, Salt Lake City, for appellee.

Justice DURHAM, opinion of the Court:

## INTRODUCTION

¶ 1 In July 2006, appellee Staker & Parson Companies (Staker) worked as a contractor for UDOT on an I–15 construction project near Spanish Fork, Utah. Appellant Kent Turner sustained serious injuries in a car accident near the work site. He filed suit for negligence against Staker in July 2010— nearly four years after the accident. The district court granted Staker's motion to dismiss, holding that Turner's suit was time-barred under Utah Code section 78B–2–225(3)(b)'s two-year statute of limitations. On appeal, Turner argues that his claim qualifies for a four-year statute of limitations under Utah Code section 78B–2–225(8).[1]

¶ 2 We hold that Turner's complaint alleged sufficient facts to survive dismissal. We therefore reverse the district court's grant of the motion to dismiss and remand for further proceedings.

## BACKGROUND

¶ 3 Staker worked as a contractor for UDOT during the summer of 2006, performing rotomill and overlay work on I–15 near Spanish Fork, Utah. Staker also was responsible for implementing appropriate safety measures around the work site. Accordingly, Staker hired Atlas Engineering (Atlas) to prepare a safety plan to provide adequate warning to motorists approaching the construction site. The duration of the project was approximately two weeks.

¶ 4 On July 17, 2006, Turner merged onto I–15 northbound from an onramp just south of Spanish Fork. Further north, traffic had backed up near the construction site. According to Turner, a bend in the road and an overpass obstructed his view, preventing him from seeing the traffic congestion.[2] Additionally, Turner alleged that Staker had not posted sufficient signs to warn motorists approaching that particular stretch of I–15. Upon rounding the turn, Turner's car collided with another vehicle. Turner sustained serious injuries, including multiple fractures in his legs and ribs, and lacerations to his fingers, spleen, and liver.

¶ 5 Turner filed a negligence suit against Staker and Atlas on July 13, 2010. Staker moved to dismiss the claim, arguing that Utah Code section 78B–2–225(3)(b)'s two-year statute of limitations on tort claims against providers of construction-related services rendered Turner's suit untimely. Turner opposed the motion, arguing that his claim qualified for an exception—provided in Utah Code section 78B–2–225(8)—to the two-year limitation period. Subsection (8) makes the two-year limitation period inapplicable to actions "against any person in actual possession or control of the improvement as owner, tenant, or otherwise, at the time any defective or unsafe condition of the improvement" causes injury.

¶ 6 The district court granted Staker's motion to dismiss, specifically rejecting Turner's reliance on subsection (8). The court interpreted subsection (8) to apply only to entities that (1) are not providers and (2) have a legal possessory interest akin to that of an owner or tenant.[3] It then noted that Staker "was

---

1. Subsection (8) provides an exception from subsection (3)(b)'s two-year limitation. If Turner qualifies for this exception, his suit is timely under the generally applicable four-year statute of limitations. See Utah Code § 78B–2–307(3).

2. Because we are reviewing Staker's motion to dismiss, we assume all allegations in Turner's complaint to be true. *Osguthorpe v. Wolf Mountain Resorts, L.C.,* 2010 UT 29, ¶ 10, 232 P.3d 999.

3. Staker argues that this characterization of the district court's holding "paints ... too broadly."

On this point, we note that the district court's order specifically said:

> "Otherwise" must be read as akin to or of the same nature as "ownership" or "tenancy" and by virtue of that, [Staker] had a legal right to possess and control I–15. No such allegation appears in the pleadings. In fact, the only allegation, that [Staker] was a contractor, casts [Staker] as a "provider" .... [Staker] as a contracting *provider* was not an "owner, tenant, or otherwise" of I–15. Accordingly, as a matter of law, [subsection (8)] does not apply.

not the owner of I–15," "did not own the fee[,] and did not have the right to sell, convey, or dispose of I–15." Staker, as a "contracting provider," "was not an 'owner, tenant, or otherwise' of I–15. Accordingly, as a matter of law, [subsection (8)] does not apply." Turner timely appealed the dismissal. We have jurisdiction under Utah Code section 78A–3–102(3)(j).

## STANDARD OF REVIEW

¶ 7 A ruling on a motion to dismiss presents a legal question that we review for correctness, affording no deference to the district court's decision. *State v. Arave,* 2011 UT 84, ¶ 25, 268 P.3d 163. We also "review questions of statutory interpretation for correctness." *State v. Parduhn,* 2011 UT 57, ¶ 16, 266 P.3d 765 (internal quotation marks omitted).

## ANALYSIS

¶ 8 Utah Code section 78B–2–225(3)(b) provides a two-year statute of limitations on tort claims "by or against a provider." The statute defines "provider" as "any person" performing services "for or in relation to an improvement." UTAH CODE § 78B–2–225(1)(f). The statute defines "person" as "an individual, corporation, limited liability company, partnership, joint venture, association, proprietorship, or any other legal or governmental entity." *Id.* § 78B–2–225(1)(e). The term "improvement" includes "any building, structure, infrastructure, road, utility, or other similar … alteration to real property." *Id.* § 78B–2–225(1)(d). Turner's complaint alleged that Staker is a Utah corporation that provided construction services in relation to an improvement to I–15. Thus, Staker is a provider, and the two-year limitations period in subsection (3)(b) applies to

Turner's claim unless it qualifies for one of the exceptions outlined in subsections (6), (7), or (8).[4] If, as he argues, Turner's claim qualifies for the exception provided by subsection (8), the applicable statute of limitations would be four years instead of two, and his suit against Staker would be timely. *See* UTAH CODE § 78B–2–307(3).

¶ 9 Consequently, the central issue on appeal is whether Turner pled sufficient facts to support a reasonable inference that subsection (8) applies to his claim. Answering that question hinges on how we construe the following language: "[t]he time limitation imposed by [section 225] does not apply to any action against any person in *actual possession or control of the improvement as owner, tenant or otherwise,* at the time any defective or unsafe condition of the improvement proximately causes the injury for which the action is brought." Utah Code § 78B–2–225(8) (emphasis added). Since Staker is clearly not an owner or tenant, the dispute hinges on our construction of the word "otherwise."

¶ 10 Staker argues that subsection (8) applies to providers only if they have a legal possessory interest in the property underlying the improvement. Invoking the canons of construction *noscitur a sociis*[5] and *ejusdem generis,*[6] Staker interprets the word "otherwise" in subsection (8) as denoting a possessory interest akin to that of an owner or tenant. Thus, according to Staker, the two-year limitations period in subsection (3)(b) applies to all providers that do not have a legal right to possess or control the improvement analogous to that of an owner or tenant.

¶ 11 Turner, by contrast, argues that the plain meaning of the term "otherwise" expands subsection (8)'s definition of actual

**4.** Subsection (6) provides an exception for plaintiffs who are minors or mentally incompetent. Subsection (7) provides an exception for actions related to the death or bodily injury of an individual engaged in constructing an improvement. Neither exception is applicable here.

**5.** The phrase means "it is known from its associates." *See Salt Lake City v. Salt Lake Cnty.,* 568 P.2d 738, 741 (Utah 1977). Where general terms follow specific terms in a statute, this canon requires that the meaning of a general term be

"restricted to a sense analogous to the preceding specific terms." *Nephi City v. Hansen,* 779 P.2d 673, 675 (Utah 1989).

**6.** The phrase means "of the same kind." The canon suggests that general terms indicating a class are interpreted according to the specific terms that precede them unless the statutory language shows a contrary intent. *See Ball v. Pub. Serv. Comm'n,* 2007 UT 79, ¶ 54, 175 P.3d 545.

possession or control, rather than narrowing it. When paired with a noun, adjective, or adverb, the ordinary meaning of the term "otherwise" is "not."[7] Thus, Turner argues that subsection (8) defines actual possession or control quite broadly, as the types of possession or control exercised either by an owner or tenant, or by someone who is *not* an owner or tenant. In other words, subsection (8) requires *actual* possession or control; it does not require *legal* ownership or tenancy. We agree.

¶ 12 When interpreting statutory language, our primary task is to give effect to the intent of the legislature. *Harold Selman, Inc. v. Box Elder Cnty.*, 2011 UT 18, ¶ 18, 251 P.3d 804. We look first to the plain language of the statute and "presume that the legislature used each word advisedly and read each term according to its ordinary and accepted meaning." *Boyle v. Christensen*, 2011 UT 20, ¶ 27, 251 P.3d 810 (internal quotation marks omitted). Wherever possible, we give effect to every word of a statute, avoiding "[a]ny interpretation which renders parts or words in a statute inoperative or superfluous." *State v. Arave*, 2011 UT 84, ¶ 28, 268 P.3d 163 (internal quotation marks omitted).

¶ 13 The plain language of subsection (8) does not require a legal possessory interest in the property underlying the improvement. Section 225 imposes two time limitations on claims against providers: a two-year statute of limitations and a nine-year statute of repose. *See* UTAH CODE § 78B–2–225(3)(b), (4). Subsection (8) modifies the time limitation for suits against persons "in actual possession or control *of the improvement* as owner, tenant, or otherwise" at the time of injury. *Id.* § 78B–2–225(8) (emphasis added). By its plain terms, subsection (8) requires some degree of possession or control over the improvement itself, not necessarily the underlying property. The district court therefore erred in concluding that Turner needed to allege facts indicative of Staker's legal right to "sell, convey, or dispose of 1–15" in order for subsection (8) to apply to Turner's claim.

¶ 14 Additionally, both Staker and the district court's order improperly employ *ejusdem generis* to interpret the word "otherwise" in subsection (8). *Ejusdem generis* applies when a nonexhaustive enumeration of specific items is followed by a general term that suggests a class. *See, e.g., State v. A.T. (State ex rel. A.T.)*, 2001 UT 82, ¶¶ 12–13, 34 P.3d 228; *State ex rel. J.L.S.*, 610 P.2d 1294, 1295 (Utah 1980). For example, in *State ex rel A.T.*, we interpreted the phrase "any other act of lewdness" to include simulated masturbation in a public place in light of the terms "public intercourse, sodomy, exposure of the genitals or buttocks, or masturbation" that preceded it. 2001 UT 82, ¶13, 34 P.3d 228. Similarly, in *State ex rel. J.L.S.*, we held that a criminal statute containing the phrase "otherwise takes indecent liberties with another" did not apply to a minor who touched the clothed breasts of another adolescent because the preceding phrase required that the actor "touch the anus or any part of the genitals of another...." 610 P.2d at 1295–96 (internal quotation marks omitted).

¶ 15 Unlike the language involved in *State ex rel. A.T.* and *State ex rel. J.L.S.*, the term "otherwise" in subsection (8), which stands alone, does not suggest a class. As the district court correctly noted, the plain and ordinary meaning of the term "otherwise" is "in a different manner, in another way, or in other ways." BLACK'S LAW DICTIONARY 1253 (4th ed. 1968); *see also* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1598 (1961) (defining "otherwise" as "in a different way or manner").[8] In *State ex rel. J.L.S.* the term "otherwise" suggested a general class of offensive touching because it was paired with the phrase "takes indecent liberties with another." 610 P.2d at 1295. By contrast, subsection (8)'s drafters did not include language following the term "otherwise" to suggest any meaning beyond the word's ordinary use. Thus, the plain language of subsection (8) defines "actual pos-

---

7. *See* infra ¶ 15.

8. The language in subsection (8) was originally drafted in 1967, and the legislature has retained essentially the same language through six subsequent revisions to section 225.

session or control" as the type of possession or control exercised by an owner or tenant, *or* a type of possession or control exercised in a manner different from that of an owner or tenant. Had subsection (8)'s drafters replaced "otherwise" with a phrase such as "other possessory interest," "similar interest in property," or added the phrase "has a property interest" after the word "otherwise," then *ejusdem generis* would be an appropriate interpretive tool.

¶ 16 Interpreting the statute in the manner Staker suggests would also render portions of subsection (8) superfluous. Both the statute of repose and the statute of limitations provided in section 225 apply exclusively to providers. Utah Code § 78B–2–225(2)(a), (2)(e), (3)(a)-(b), (4)-(5). Therefore, when subsection (8) limits the applicability of "the time limitation imposed by this section" to any person in actual possession or control of the improvement, the language must apply to providers if it is to have any meaning. Staker would have us interpret subsection (8) as applicable only to providers of construction-related services that also have a possessory interest in the underlying property as owner, tenant, or otherwise. Although this reading makes sense with respect to owners constructing improvements on their own property, it is difficult to imagine plausible examples of persons who might provide construction-related services to an improvement while "otherwise" having a possessory interest in the underlying property.[9] Certainly future litigants injured by an adverse possessor's negligently constructed swimming pool or tree house would appreciate an additional two years to file suit; however, we must avoid interpretations that effectively "render[ ] parts or words in a statute inoperative or superfluous." *Arave*, 2011 UT 84, ¶ 28, 268 P.3d 163 (internal quotation marks omitted). Interpreting subsection (8) to require a legal possessory interest similar to that of

an owner or tenant renders the term "otherwise" superfluous.

¶ 17 Finally, we note that interpreting subsection (8) to encompass physical possession or control is in harmony with the legislative purpose explicitly articulated in section 225. Subsection (2) states the legislature's intent to limit providers' exposure to lawsuits "after the possibility of injury or damage has become highly remote." UTAH CODE § 78B–2–225(2)(a). Failure to place reasonable limits on a provider's liability would increase the "costs and hardships" of anticipating future litigation, which include "liability insurance costs, records storage costs, undue and unlimited liability risks during the life of both a provider and an improvement, and difficulties in defending against claims many years after completion of an improvement." *Id.* § 78B–2–225(2)(b). Persons in physical possession or control of an improvement where unsafe conditions threaten to cause an injury can both adequately prepare for subsequent litigation and obtain liability insurance. Additionally, persons in physical possession or control of an improvement are more likely to be aware of unsafe conditions and take corrective action. Therefore, allowing a plaintiff two additional years to file suit against a provider in physical possession or control of an improvement does not implicate any of the concerns the legislature identified in subsection (2). Indeed, even under Staker's construction of subsection (8), owners and tenants would face exposure to lawsuits beyond the two-year statute of limitations.

## CONCLUSION

¶ 18 Under our interpretation of Utah Code section 78B–2–225, subsection (8) does not require an interest in property analogous to that of an owner or tenant. Therefore, allegations that a provider had "actual possession or control" of an improvement are

---

**9.** Staker suggests two examples in its brief: (1) an on-site property manager who is not an owner or tenant, but who is in actual possession or control of the improvements to a property; and (2) an adverse possessor who has not established ownership but has actual control or possession of the property. The first example seems to be fairly consistent with Turner's reading of subsection (8) requiring physical possession or control.

The second represents a plausible application of subsection (8) only to the extent that the legislature wanted to shield from liability adverse possessors that construct improvements to real property before establishing ownership rights. Neither the text nor the structure of section 225 indicates that the legislature had this scenario in mind when it drafted the statute.

sufficient to survive a motion to dismiss a suit against a provider filed more than two (but less than four) years after the claim accrued. We therefore reverse the district court's order dismissing Turner's suit and remand for further proceedings consistent with this opinion.

Justice DURHAM authored the opinion of the Court, in which Chief Justice DURRANT, Associate Chief Justice NEHRING, Justice PARRISH, and Justice LEE joined.