*This opinion is subject to revision before final
publication in the Pacific Reporter.*

**2015 UT 1**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

B.R., a minor child and C.R., a minor child,
through their conservator WILLIAM JEFFS,
*Appellants,*

*v.*

HUGO RODIER, M.D.,
*Appellee.*

No. 20121098
Filed January 9, 2015

Third District, Salt Lake
The Honorable Robert Faust
No. 100907025

Attorneys:

Allen K. Young, Tyler S. Young, Provo,
Jonah Orlofsky, Chicago, IL, for appellants

Vaun B. Hall, Salt Lake City, for appellee

JUSTICE LEE authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, JUSTICE DURHAM, JUSTICE PARRISH, and
JUDGE PEARCE joined.

ASSOCIATE CHIEF JUSTICE NEHRING does not participate herein;
COURT OF APPEALS JUDGE JOHN A. PEARCE sat.

JUSTICE LEE, opinion of the Court:

¶1   David Ragsdale shot and killed his wife Kristy in January, 2008. He did so while under the influence of medications prescribed to him by Nurse Practitioner Trina West. The Ragsdales' children, left effectively parentless after David went to prison on a guilty plea to the charge of aggravated murder, filed suit in tort through their conservator, William Jeffs.

¶2   In a previous case we reversed the dismissal of the children's tort suit against Nurse West. *See B.R. ex rel. Jeffs v. West*, 2012 UT 11, 275 P.3d 228. There we held that West had a duty of reasonableness in her affirmative acts of prescribing medication to David Ragsdale, and concluded that that duty extended to third parties who might be injured as a foreseeable result of her negligence. *Id.* ¶ 20.

¶3   In this case we review a decision dismissing the children's claim against a physician, Dr. Hugo Rodier, who is identified as the "consulting physician" for Nurse West. Again the question is one of "duty" in tort. The plaintiffs assert that Dr. Rodier had a duty to consult directly with Nurse West as a precondition to any individual prescription of controlled substances for David Ragsdale. They cite provisions of the Utah Nurse Practice Act, UTAH CODE §§ 58-31b-101 to -802, as the basis for such a duty. We affirm, finding nothing in the cited provisions of the statute to impose on a physician a duty to consult on each individual prescription of a controlled substance.

I

¶4   Because this matter was resolved on a motion to dismiss, the relevant facts are those alleged by the plaintiffs. The following factual summary is taken from the Amended Complaint, which we accept as true for purposes of our analysis.

¶5   At the time David Ragsdale killed his wife, he was a patient under the care of Nurse West. Nurse West had prescribed Ragsdale "at least six medications, including Concerta, Valium, Doxepin, Paxil, pregnenolone, and testosterone." *B.R. ex rel. Jeffs v. West*, 2012 UT 11, ¶ 2, 275 P.3d 228. "Plaintiffs alleged negligence in the prescription of the medications that caused Mr. Ragsdale's violent outburst and his wife's death." *Id.* ¶ 3.

¶6   Nurse West had statutory authority to prescribe controlled substances so long as she did so "in accordance with a consultation and referral plan." UTAH CODE § 58-31b-102(13)(c)(iii). By statute, a "consultation and referral plan" is a "written plan jointly developed by an advanced practice registered nurse and a consulting physician that permits the advanced practice registered nurse to prescribe schedule II–III controlled substances in consultation with the consulting physician." *Id.* § 58-31b-102(5).

¶7    Plaintiffs alleged that Dr. Rodier agreed to be Nurse West's consulting physician. But they also asserted that "no consultation plan existed" and that Nurse West had prescribed and then increased dosages of various schedule II and III controlled substances to Ragsdale without ever consulting with Dr. Rodier. Finally, plaintiffs alleged negligence on Dr. Rodier's part in not affirmatively reaching out to Nurse West to discuss her treatment decisions regarding Ragsdale's care.

¶8    In the district court, plaintiffs consistently framed their claims against Dr. Rodier in terms of an *omission*—of his failure to consult with Nurse West. Thus, as to Dr. Rodier, the Amended Complaint's allegations of negligence concerned his "*failure . . . to consult with Trina West,*" his "*failure . . . to properly monitor . . . David Ragsdale,*" and such "*failures . . .* [being] a direct, proximate, and foreseeable cause" of Ragsdale's violent episode. (Emphasis added).

¶9    The allegations against Nurse West were different. They were framed in terms of affirmative negligence in prescribing the medication in question. Nurse West filed a motion to dismiss, asserting that she had no duty of care to non-patients. *See Jeffs*, 2012 UT 11, ¶ 4. The district court agreed, but we reversed that decision on appeal. *Id.* ¶ 20. The plaintiffs subsequently entered into a voluntary settlement with Nurse West, but Dr. Rodier remained in the suit.[1] Dr. Rodier then filed the motion to dismiss that is before us on this appeal.

¶10   The question presented on this motion concerned the legal basis for a duty by Dr. Rodier to supervise or consult with Nurse West in her prescription of controlled substances for David Ragsdale. Defendants denied the existence of any such duty. In opposing the motion, plaintiffs asserted that "[Dr. Rodier] is liable because he had a statutory obligation to supervise Nurse West's prescription of the drugs she prescribed for Mr. Ragsdale, and [Dr. Rodier] failed to comply with that statutory duty." In other

---

[1] The same is true for the clinic that employed Nurse West. The clinic filed a motion to dismiss after our remand in *B.R. ex rel. Jeffs v. West*, 2012 UT 11, 275 P.3d 228. But the district court denied that motion to dismiss, holding that the clinic could still be vicariously liable based on Nurse West's actions.

words, plaintiffs contended that Dr. Rodier was required "to consult with [Nurse West] *on the prescription of any schedule II or III controlled substances*." (Emphasis added). They also argued that "a Utah statute imposed a duty on Dr. Rodier to *consult with Nurse West before* she prescribed certain controlled substances." (Emphasis added). As highlighted by counsel's oral argument on the motion, plaintiffs' theory was that the legislature "intended" that a consulting physician provide consultation "*[a]nytime* a nurse practitioner is prescribing these dangerous medications." (Emphasis added).

¶11 The district court granted the defendants' motion, concluding that Dr. Rodier had no statutory "special relationship" with the plaintiffs and thus no duty in a case charging him with nonfeasance. We now review that decision de novo, without deference to the district court. *Turner v. Staker & Parson Cos.*, 2012 UT 30, ¶ 7, 284 P.3d 600.

II

¶12 The issue on appeal concerns the threshold question of *duty* in tort. Duty is an essential element of a claim for negligence. Without a duty to act reasonably, a defendant may not be charged with liability for negligence. As to duty, "[t]ort law draws a critical distinction between affirmative acts and omissions." *Hill v. Superior Prop. Mgmt. Servs., Inc.*, 2013 UT 60, ¶ 10, 321 P.3d 1054. "As a general rule, we all have a duty to act reasonably in our affirmative acts; but no such duty attaches with regard to omissions except in cases of a special relationship." *Id.*

¶13 This is a case of alleged omissions. As noted above, the premise of plaintiffs' case against Dr. Rodier is his *failure* to consult with Nurse West in her individual prescriptions of controlled substances for David Ragsdale. Thus, plaintiffs have not alleged any acts of affirmative misconduct by Dr. Rodier—such as any agreement to a legally deficient consultation plan, or actions in contravention of the terms of an agreed-upon plan.[2] So we need

---

[2] This conclusion is underscored and explained by our analysis in Part III below. There we note that plaintiffs sought to reformulate their conception of Dr. Rodier's duty to encompass these theories in their reply brief and at oral argument on appeal. But we

not and do not determine whether such a duty would attach in these circumstances. Our analysis centers instead only on the claims as pleaded and argued in the district court—Dr. Rodier's alleged omissions in failing to consult with Nurse West as to individual prescriptions she wrote for Ragsdale.

¶14 On that question we have little difficulty concluding that plaintiffs have failed to allege a legal basis for the duty in question. For the reasons set forth below, we hold that the statutory framework identified by plaintiffs—the Nurse Practice Act—does not establish a duty by consulting physicians like Dr. Rodier to consult on an individual, prescription-by-prescription basis. And because plaintiffs' only allegations of negligence concern Dr. Rodier's failure to consult on individual prescriptions, we affirm the dismissal of claims premised on that duty.

¶15 First, the Nurse Practice Act is aimed at *nurse practitioners*, not physicians. It includes detailed provisions regulating the practice of "advanced practice registered nursing," or in other words "the practice of nursing within the generally recognized scope and standards of advanced practice registered nursing as defined by rule and consistent with professionally recognized preparation and education standards." UTAH CODE § 58-31b-102(13). And the terms of the Act are aimed at the comprehensive regulation of advanced practice registered nursing—at identifying the qualifications for certification, *id*. §§ 58-31b-302, -303; setting the terms of and exemptions from licensure, *id*. §§ 58-31b-305 to -308; prescribing standards and requirements for continuing education, *id*. § 58-31b-309; providing for regulation of and penalties for unprofessional and unlawful conduct, *id*. §§ 58-31b-501 to -503; and setting restrictions on practice within limits of competency, *id*. § 58-31b-801.

¶16 These are hardly the terms of regulation of *physicians*. The Nurse Practice Act is aimed at nurse practitioners. A physician would be unlikely to view this statute as the place to find the legal duties of a doctor, particularly where such duties are set forth comprehensively in code provisions aimed specifically at doctors. *See, e.g.,* Utah Medical Practice Act, UTAH CODE §§ 58-67-101 to -

_____

decline to reach these issues because we find them unpreserved and thus not properly presented.

806; Utah Medical Practice Act Rule, UTAH ADMIN. CODE R156-67-101 to -603.

¶17 Second, the Nurse Practice Act nowhere addresses the specific duty—of consultation on a prescription-by-prescription basis—asserted by the plaintiffs. To the contrary, the statute generally acknowledges the prerogative of a licensed nurse practitioner to prescribe and administer "schedule II-III controlled substances," at least so long as it is "in accordance with a consultation and referral plan." UTAH CODE § 58-31b-102(13)(c)(iii).

¶18 Plaintiffs interpret this provision as imposing an obligation on the consulting physician to consult with the nurse practitioner on each individual prescription or administration of a controlled substance. We read the statute differently. It does not require prescription-by-prescription consultation or supervision *by the doctor*. It places the onus on the nurse practitioner, and authorizes a prescription by such practitioner "in accordance with a consultation and referral plan." *Id.* A "consultation and referral plan," moreover, is not defined in terms requiring the physician to supervise or consult on individual prescriptions. Instead such a plan is simply a "written plan jointly developed by an advanced practice registered nurse and a consulting physician that *permits the advanced practice registered nurse to prescribe schedule II–III controlled substances* in consultation with the consulting physician." *Id.* § 58-31b-102(5) (emphasis added).

¶19 In a statute aimed at and regulating *nurse practitioners*, the reference to "consultation with the consulting physician" is best understood as imposing an obligation *on the nurse practitioner*. That conclusion follows not only from the content and nature of the Nurse Practice Act, but also from the apparent sense of medical "consultation" in this context. A consulting physician is a specialist, and when one consults with a specialist it is at the instance of the generalist (and not the other way around). *See* MERRIAM-WEBSTER'S MEDICAL DICTIONARY 137 (1995) (defining "consultant" as "a physician and especially a specialist *called in* for professional advice or services usually *at the request of another physician*—called also *consulting physician*" (first and second emphasis added)); *id.* (defining "consult" as "to ask the advice or opinion . . . of a doctor"). Thus, the statutory definition of "consultation and referral

plan" is best understood as contemplating consultation at the behest of the subject of the Nurse Practice Act—the nurse practitioner.

¶20  Finally, a contrary conclusion is hard to reconcile with the operative requirement of the statute—of prescriptions by nurse practitioners "in accordance with a consultation and referral plan." UTAH CODE § 58-31b-102(13)(c)(iii). The duty that plaintiffs advocate would render the notion of a "plan" superfluous. If individualized consultation is required as to each prescription or administration, no further "plan" is needed. And the nurse practitioner subject to individualized consultation on each prescription is not actually prescribing medication, or at least not doing so in accordance with a plan. Instead she is doing so under the direct, individualized supervision of a physician. That is not what the statute prescribes, and we cannot accept the plaintiffs' proffered duty without doing violence to the statutory language.

¶21  For these reasons we affirm the dismissal of plaintiffs' negligence claims against Dr. Rodier. We do so on the basis of our determination that the plaintiffs have failed to establish a legal footing in the Nurse Practice Act to support the duty they alleged and argued in the district court—a duty by Dr. Rodier to consult on each prescription provided by Nurse West for David Ragsdale.

III

¶22  The above grounds establish the basis for our affirmance of the district court's decision in this case. But they do not fully address the issues that plaintiffs have attempted to raise *on appeal*. In their reply brief and at oral argument, plaintiffs sought to introduce a theory of duty that extended beyond the narrow duty addressed above. We address that theory here, and reject it as unpreserved.

¶23  In their opening brief on appeal, plaintiffs advanced a theory of duty mirroring that which they asserted in the district court (and addressed above)—that the Nurse Practice Act required "physician involvement" or individualized "consultation" as to each prescription for controlled substances. In their reply brief, however, plaintiffs sought to reformulate their allegation of duty. There they alleged that Dr. Rodier's negligence was not just in not consulting on individual prescriptions but in failing to *put in place* an adequate consultation plan in the first place. Specifically, under

this theory, plaintiffs asserted that it would be a violation of a physician's statutory duty to enter into a plan that gave nurse practitioners unfettered discretion to prescribe controlled substances without any meaningful, actual consultation with a physician.

¶24 Plaintiffs' counsel sought to press the same point at oral argument on appeal. In response to questions from the court, counsel asserted that the statute requires the establishment of a meaningful consultation plan, while insisting that the mere authorization of *carte blanche* authority for a nurse practitioner would not qualify under the statute. From there plaintiffs' counsel sought to frame Dr. Rodier's negligence as a result of an affirmative act—of entering into a statutorily inadequate consultation plan. And at that point both counsel and the court began to turn their attention to an affidavit identified by counsel for plaintiffs—an affidavit asserting that a consultation plan adopted by Nurse West and Dr. Rodier left sole discretion regarding any consultation to Nurse West.

¶25 The question of a duty to enter into a statutorily sufficient consultation plan, however, was not properly preserved in the district court and is not properly before us on appeal. No such theory appeared in plaintiffs' Amended Complaint. And counsel for plaintiffs ultimately conceded at oral argument that this theory was not advanced in any argument presented to the district court. It's hard to see how it could have been. The terms of the cited affidavit were contradicted by plaintiffs' allegation in the Amended Complaint that "no consultation plan existed." And in any event the affidavit was ultimately stricken on stipulation of the parties. So the only basis for a duty that was preserved at the district court was the one raised and rejected above—of a statutory duty of a physician to supervise or consult on individual prescriptions for controlled substances.

¶26 We accordingly affirm the dismissal of the only claim that was preserved and argued below, without reaching the question whether a physician might have an affirmative duty to agree to a statutorily sufficient consultation plan, or to consult in accordance with the terms of any plan.

———————