**2019 UT App 203**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
CHAD MICHAEL HATCH,
Appellant.

Opinion
No. 20180622-CA
Filed December 12, 2019

Eighth District Court, Vernal Department
The Honorable Edwin T. Peterson
The Honorable Clark A. McClellan
No. 151800761

Herschel Bullen, Attorney for Appellant

Sean D. Reyes and Marian Decker,
Attorneys for Appellee

JUDGE GREGORY K. ORME authored this Opinion, in which
JUDGES RYAN M. HARRIS and DIANA HAGEN concurred.

ORME, Judge:

¶1     Chad Michael Hatch appeals his convictions for one count of aggravated sexual abuse of a child, two counts of sodomy on a child, and one count of attempted aggravated sexual abuse of a child, all first degree felonies. He argues that various instances of ineffective assistance of counsel and trial court error entitle him to reversal and a new trial. We affirm.

BACKGROUND[1]

*The Abuse*

¶2    In 2007, when Hatch's stepdaughter (Victim) was approximately seven years old, Hatch drove her out of town and pulled over in a deserted area. Victim testified that Hatch claimed he "just wanted to spend time with [her]" and "show [her] something that his friend and daughter did." Hatch then told Victim to "take off [her] clothes," which she did, and he proceeded to "lick[] and touch[] [Victim's] vagina." This lasted for "more than a minute" until Victim's mother (Mother) texted Hatch that dinner was ready. Hatch told Victim to get dressed and "not to tell anyone" about what had happened, and they returned home.

¶3    A while later, when Victim was "[a]round the same age" and while Hatch was home alone with Victim, he asked her "to return the favor." Hatch then "pulled down his pants" and told Victim to "lick his penis," which she did "[b]ecause [she] didn't want him to get mad."

¶4    On another occasion, when Victim was still around the same age, Hatch told Victim's brother (Brother) "to go clean up dog poop" outside, and as Brother left, Hatch locked the door behind him. Hatch then took Victim to his bedroom, put on a pornographic movie showing "a naked woman and man . . . have sex" and told Victim to get undressed, which she did.[2]

---

1. "On appeal, we recite the facts from the record in the light most favorable to the jury's verdict and present conflicting evidence only as necessary to understand issues raised on appeal." *State v. Daniels*, 2002 UT 2, ¶ 2, 40 P.3d 611.

2. At the time of trial, Victim could not remember whether she had removed her underwear or whether Hatch was also undressed.

Hatch then laid on the bed next to Victim until Brother, who had finished his poop-scooping task, began knocking loudly on the door. Hearing Brother, Hatch stopped the pornographic movie and told Victim "to get dressed."

¶5 While cleaning up after the dog was "one of the chores that [Brother] had to do," he specifically remembered this occasion and that it happened sometime "between 2007 [and] 2008." He remembered it so clearly because, when he had finished, he went "to open the door, and the door was locked," which was not typical. He "knocked on the door and nobody came, so [he] started slamming on the door and . . . screaming." As he "was a little kid," it "frustrated" him. He "started crying because [he] didn't know what to do." After "knocking and banging on the door," "[i]t took a while" until Hatch let Brother back into the house.

¶6 Victim also testified that a few years later, when she was around 11 or 12 years old, she was alone with Hatch in his bedroom, and Hatch showed her a shoebox full of pornographic magazines. While they were looking at the magazines, Hatch told Victim that she "could go in the bathroom and pleasure [her]self," which she did not do. Mother, who later learned of this incident, confirmed that it occurred sometime during the "warmer" months of 2011.

¶7 When Victim was approximately thirteen years old, she wrote about the abuse by Hatch in her journal and later shared the entries with Brother and Mother, at which point the police were called. Victim had told Mother about the incidents earlier, but Mother "didn't do anything about it because [she] was scared, [she] didn't know what to do, and [she] honestly had not believed [Victim] at the time."[3]

---

3. Mother did take Victim to a doctor for a checkup soon after Victim's earlier disclosure, but she did not call the police at that

(continued…)

¶8    Following a police investigation, the State charged Hatch with aggravated sexual abuse of a child (count 1), sodomy upon a child (count 2), another act of sodomy upon a child (count 3), and attempted aggravated sexual abuse of a child (count 4)—all first degree felonies. The State also charged Hatch with dealing in material harmful to a minor (count 5), a third degree felony.

*Hatch's Claimed Absence From Trial*

¶9    On the morning trial was to begin, a discussion was held in the trial court's chambers with Hatch's trial counsel and the prosecutor both present but with Hatch absent. During the in-chambers discussion, the following exchange took place:

> [Trial counsel]: Let me say one thing that I'm going to do different today than I usually do. Usually when I do a trial, when we come back with the . . . potential jurors, I don't bring my client in. But I am going to this time, and usually I don't like to do it for a strategic reason, but last time we had a trial we all talked about some case law that says that it's reversible error if you don't bring the client in . . . .
>
> [Trial court]: Oh. I am delighted to have your client here. . . .
>
> [Trial counsel]: Well, the only reason I'm saying this is because . . . I don't like to bring my client in,

---

(…continued)

time. Mother testified that she "was manipulated to believe that [her] kids were lying to [her]," but after separating from Hatch, she came to believe Victim's accounts of abuse because she "realize[d] things that [she] did not realize when [she] was with [Hatch]."

and I have my own reasons for it, but because of my client's personality and because of the case law, I am bringing him in this time. Does that make sense?

[Trial court]: Absolutely. I'm all good with that. As a matter of fact, I noted he wasn't here today and he had an absolute right to be here during the entire proceeding.

Trial counsel, the court, and the prosecutor then proceeded to discuss prospective evidence, jury instructions, and proposed voir dire questions. Following this discussion, the court took a recess.

¶10 After the recess, the court reconvened the proceedings in the courtroom. The jury pool was brought in, and the court proceeded to administer an oath, asked preliminary voir dire questions, and gave the jury pool opening instructions. While the minutes of the day's trial, prepared by the court clerk, indicate that Hatch was present, the trial transcript itself contains no mention of Hatch for the first few minutes of the proceedings in the courtroom. Eventually, however, when the court asked the participants on each side to introduce themselves, trial counsel introduced Hatch to the prospective jurors, and the court greeted Hatch by saying, "Hello, Mr. Hatch. Good morning." Prior to that on-the-record introduction, the court had asked the members of the jury pool to briefly introduce themselves and had asked a few preliminary questions to determine whether the panelists met the statutory qualifications to sit on a jury. Following that on-the-record introduction, the court proceeded with the remainder of the voir dire process. After asking questions of the jury pool in the courtroom, the court allowed individual questioning of prospective jurors in chambers, but the record is clear that Hatch was present during those in-chambers interviews.

## *Grandfather's Testimony*

¶11   By way of a pretrial motion in limine, trial counsel sought to admit "false accusations [that Victim] has made against [Brother] concerning sexual abuse." Specifically, trial counsel argued, quoting *State v. Martin*, 1999 UT 72, 984 P.2d 975, that nothing in rule 412 of the Utah Rules of Evidence "would exclude evidence of an allege[d] rape victim's previous false allegations of rape [because] [e]vidence of a false accusation would be relevant to [Victim's] credibility." *See id*. ¶ 16.

¶12   In a pretrial hearing, trial counsel alleged that Victim had told Hatch's father (Grandfather)[4] that Brother "inappropriately touched" her, and she was interviewed by the Division of Child and Family Services (DCFS) in connection with this allegation but denied the allegation. Trial counsel argued that the testimony should "be admissible because it goes to the credibility of the accuser" and although rule 412 generally prohibits evidence of a victim's past sexual history, the rule does not prohibit evidence of Victim's allegation and recantation "because . . . it's a false allegation [and] 412 doesn't cover that." Trial counsel also argued that under rule 608(c) of the Utah Rules of Evidence, "any evidence is admissible that shows bias, prejudice, or motive." Trial counsel further alleged that Hatch "was reported and charged because [Grandfather] had turned [Brother] in" and, in response, Brother told the police about Victim's journal entries detailing Hatch's abuse of her. Trial counsel then asked for the court's permission to call as witnesses Grandfather and the DCFS worker who interviewed Victim about Victim's claim of abuse by Brother and her denial of the allegation.

---

4. We note that Hatch's father is not Victim's biological grandfather, but we refer to him as Grandfather for ease of reference.

¶13    The court declined to rule on the motion at that time, stating that it could not "rule on things that haven't happened yet" and that all trial counsel had produced was "speculative . . . evidence." The court informed trial counsel that it could not foretell "what will or will not be hearsay" but that they could revisit the issue during trial, "outside the presence of the jury."

¶14    During opening statements, trial counsel told the jury that Victim had told Grandfather that Brother had sexually abused her. The State objected, and at a sidebar conference, trial counsel insisted that the court "ruled it could come in." The court stated that it "did not" so rule and that it had only "ruled that if [trial counsel] could get that information in" under some rule, then it could come in. The court continued:

> I had not ruled whether or not [Grandfather] could testify as to what a witness said, because it is hearsay, and I've already [ruled] that [it is inadmissible hearsay] unless there's an opportunity to present that evidence through an exclusion to the hearsay rule. So, that is inappropriate to present to the jury at this point in time. It's an out of court statement, . . . and you were given the logs from [DCFS] and it shows that [Victim] stated she had never made those statements, and nobody else said she made the statements, with the possible exception of [Grandfather]. That would make his testimony hearsay and inadmissible.

Trial counsel then argued that it was admissible as a prior inconsistent statement, but the court ruled that he could not mention it in his opening statement, explaining, "If there is an issue of prior inconsistent statement, I certainly haven't heard it yet because I've got no evidence in front of me. I have to hear the evidence."

¶15    While cross-examining Victim, trial counsel asked if she had told Grandfather about Brother sexually abusing her. Victim responded that she had not. But Victim did state that she remembered going to the Children's Justice Center where a DCFS worker interviewed her and asked if Brother had touched her inappropriately.[5] Trial counsel did not inquire further into this incident. On redirect, Victim stated that she had "never raised [an] allegation" against Brother.

¶16    At the close of the State's case, trial counsel argued that Grandfather should be allowed to testify under rules 613 and 801 of the Utah Rules of Evidence. The court ruled that Grandfather could not testify, stating,

> Well, the difficulty that the Court has, that I've had all along with this particular theory, is that it was not raised on direct. [Trial counsel], you asked her the question, you got your answer. You may not rebut questions that you raised on your own. The issue was never raised by the state. Okay? So you can't ask somebody something that you think that somebody else is going to testify to, and put that on the record, and say, see, it's inconsistent, I want to rebut it. I will not allow that testimony.

*Count 5's Dismissal*

¶17    Additionally, just before trial began, trial counsel moved to dismiss count 5—the count charging Hatch with dealing in material harmful to a minor, associated with the incident in which he allegedly showed Victim a shoebox full of pornographic magazines—arguing that "[un]like the other counts" it "has a statute of limitations on it." The court told

---

5. This DCFS interview occurred on a separate occasion from the interview in which Victim revealed the abuse by Hatch.

counsel that he "should've brought this up beforehand," and counsel responded that he was allowed to "bring it up [at] any time" and just "didn't notice this . . . until now when I was reviewing it again." There was then some discussion between the court and counsel concerning when count 5 was alleged to have occurred and whether the statute actually barred the State from charging it. The court noted that the initial information was filed on October 23, 2015, and, based on the four-year statute of limitations, *see* Utah Code Ann. § 76-1-302(1)(a) (LexisNexis 2017),[6] the evidence would have to show that the actions underlying count 5 occurred after October 23, 2011. But the court declined to rule on the issue because, at that point, there was no clear evidence of when the alleged incident took place. Still, the court informed counsel that it wanted the issue "looked into" and that counsel needed to "figure [it] out and make the motion when [he's] got it all lined up."

¶18    Later that day, when Victim testified about the episode underlying count 5, trial counsel objected to the testimony, arguing in the presence of the jury that "[i]f she's going to talk about viewing porn . . . when she was 11 or 12, then that's outside the statute of limitations for that offense." The court responded that "[i]t may well be. Anyway, the evidence is what the evidence is." The court concluded by observing that the State's "questions are appropriate." The court then overruled the objection, agreeing with the State that they could "take [it] up on another occasion." Later, Mother testified that this incident occurred sometime during the "warmer" months of 2011.

¶19    On the second day of trial, out of the presence of the jury, trial counsel moved for a directed verdict on count 5, again raising the statute of limitations defense. This time the court

---

6. Because the statutory provisions in effect at the relevant time do not differ in any way material to our analysis from those now in effect, we cite the current version of the Utah Code for convenience.

agreed with trial counsel and granted the motion. It ruled that "this particular charge can't go forward" because Mother had testified that the incident occurred "during the warm weather in 2011" and, "going on [the court's] general experience, it's not really warm in October." This meant that the incident took place before October 23, 2011, and that the four-year statute of limitations barred count 5.

¶20 After granting trial counsel's motion for a directed verdict on count 5, the trial court stated, "I think I'm going to need to give an instruction" informing the jury that "[n]o evidence [from] count [5] should be considered in weighing the other evidence that was presented." The State then interjected that "it might be helpful . . . if the jury at least has some sort of base explanation of why it was dismissed so it's not just sort of this lingering question out there." The court responded that it "certainly [could] add the statute of limitations" explanation to the instructions. Trial counsel did not object. The court eventually gave instruction 20, which informed the jury that

> Chad Hatch was charged in Count 5 with Dealing in Harmful Material to a Minor by an Adult, on or between August 23, 2005 and August 23, 2014. The evidence before the Court was not sufficient to establish the alleged conduct occurred within the time frame established by the Utah Statute of Limitations for that charge and therefore was dismissed by the Court.
>
> You are to disregard any facts presented to establish that charge and are not to consider those facts in your deliberations regarding the remaining charges.

¶21 During closing arguments, trial counsel told the jury that he usually did not "like to make a big deal about" evidence the jury had heard and been instructed to forget as "it just refreshes it more in your mind." Trial counsel then informed the jurors

that he was going to go against this usual practice, explaining that "you've heard a lot of stuff in this trial that you shouldn't have heard. And the only way . . . that I'm going to actually get you to try to do this is for me to bring it up." He then implored the jurors to get the evidence about the "pornographic material" in the shoebox "out of your mind, don't talk about it amongst each other, and that has nothing to do with this case." He concluded, "I'd ask you to please do that, I know it's difficult, and like I said, usually I don't keep ringing the bell, but there was such an amount of material about that, that I think the only way you can really do it is to try to consciously not do it."

¶22 The jury convicted Hatch on all the remaining counts. After acquiring new counsel, Hatch moved for a new trial. He asserted that he received ineffective assistance from his trial counsel, that the court erred in failing to require his presence during critical stages of the proceedings, and that the court erred in not allowing Grandfather's testimony. A different judge heard arguments on the motion for a new trial and denied the motion.[7] Hatch appeals.

ISSUES AND STANDARDS OF REVIEW

¶23 Hatch argues that trial counsel provided him with ineffective assistance in five respects. First, Hatch contends that trial counsel was ineffective for failing "to raise a crucial statute of limitation defense relating to Count [5] . . . until the morning of [the] first day of trial." Second, Hatch asserts that trial counsel was ineffective for failing to object to instruction 20, which informed the jury that count 5 was dismissed on statute of limitations grounds. Third, Hatch argues that trial counsel provided ineffective assistance when he "failed to require the

---

7. To avoid confusion, we refer to the court that conducted the trial as the "trial court" and the court that handled the motion for a new trial as the "district court."

presence of [Hatch] during critical stages of the proceedings." Fourth, Hatch contends that trial counsel was ineffective for "fail[ing] at any point to move to merge Counts [1] and [2]." Finally, Hatch argues that trial counsel was ineffective for "failing to move for a directed verdict or to dismiss Count [4] . . . for insufficient evidence."

¶24    "When a claim of ineffective assistance of counsel is raised for the first time on appeal, there is no lower court ruling to review and we must decide whether the defendant was deprived of the effective assistance of counsel as a matter of law." *Layton City v. Carr*, 2014 UT App 227, ¶ 6, 336 P.3d 587 (quotation simplified). "However, if a trial court has previously reviewed the ineffective assistance of counsel claim, an appellate court is free to make an independent determination of a trial court's conclusions, though the factual findings of the trial court shall not be set aside on appeal unless clearly erroneous." *State v. Kozlov*, 2012 UT App 114, ¶ 29, 276 P.3d 1207 (quotation simplified).

¶25    Hatch further argues that the district court incorrectly ruled that the trial court did not err when it did not "require [Hatch's] presence . . . during critical stages of the proceedings." Because Hatch first raised this issue in a motion for a new trial when he could have raised it during trial, this issue is unpreserved.[8] He argues that we can reach the issue, although

---

8. Our Supreme Court has held "that an objection that could have been raised at trial cannot be preserved [for appeal] in a post-trial motion." *State v. Fullerton*, 2018 UT 49, ¶ 49 n.15, 428 P.3d 1052. *See State v. Larrabee*, 2013 UT 70, ¶ 16, 321 P.3d 1136 ("[A]llowing defendants to preserve issues . . . through [post-trial motions] would directly contradict the purposes of the preservation rule."); *State v. Fredrick*, 2019 UT App 152, ¶ 21, 450 P.3d 1154 (holding that raising an issue in a post-trial motion is "insufficient to preserve the issue" where, during trial, appellant was aware of the basis for an objection). *See also Fullerton*, 2018

(continued…)

unpreserved, pursuant to the plain error doctrine. To prevail, Hatch must demonstrate that "(i) an error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome for the appellant, or phrased differently, our confidence in the verdict is undermined." *State v. Holgate*, 2000 UT 74, ¶ 13, 10 P.3d 346 (quotation simplified). *See State v. King*, 2006 UT 3, ¶ 13, 131 P.3d 202 ("We have consistently held that a defendant who fails to preserve an objection at trial will not be able to raise that objection on appeal unless he is able to demonstrate either plain error or exceptional circumstances.").

¶26 Hatch also argues that the district court incorrectly ruled that the trial court was not in error for "refus[ing] to allow impeaching testimony which would have contradicted [Victim's] testimony." "When the trial court denies a motion . . . for a new trial, we review that decision for an abuse of discretion, but we review the legal standards applied by the trial court in denying such a motion for correctness." *State v. Squires*, 2019 UT App 113, ¶ 23, 446 P.3d 581 (quotation simplified).

ANALYSIS

I. Count 5 and Instruction 20

¶27 "To ensure a fair trial, the Sixth Amendment of the U.S. Constitution guarantees [a criminal defendant] the right to effective assistance of counsel." *State v. Campos*, 2013 UT App 213, ¶ 23, 309 P.3d 1160. To prevail on an ineffective assistance of counsel claim, a defendant must show that (1) "counsel's

---

(…continued)
UT 49, ¶ 49 n.15 ("We reaffirm our holding in *Larrabee* and emphasize that an objection that could have been raised at trial cannot be preserved in a post-trial motion.").

performance was deficient" and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

¶28 Counsel's performance is deficient when it falls "below an objective standard of reasonableness," *id*. at 688, which requires a defendant to "overcome the strong presumption that his trial counsel rendered adequate assistance by persuading the court that there was no conceivable tactical basis for counsel's actions," *State v. Clark*, 2004 UT 25, ¶ 6, 89 P.3d 162 (quotation simplified). This review "must be highly deferential" because "it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland*, 466 U.S. at 689. Thus, counsel's performance is "deficient only if it can be said that no objectively competent attorney would have adopted the complained-of strategy." *State v. Hull*, 2017 UT App 233, ¶ 17, 414 P.3d 526. *See also Premo v. Moore*, 562 U.S. 115, 124 (2011) (stating that "the relevant question under *Strickland*" is whether "no competent attorney" would have taken the complained-of course of action).

¶29 After a defendant overcomes the high threshold of demonstrating that his counsel performed deficiently, he must next show "that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. Counsel's deficient performance is prejudicial if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A defendant's inability to establish either element defeats a claim for ineffective assistance of counsel," *State v. Reid*, 2018 UT App 146, ¶ 19, 427 P.3d 1261, and "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed," *Strickland*, 466 U.S. at 697.

¶30 Hatch asserts that he received ineffective assistance from trial counsel when counsel, by not earlier moving to dismiss count 5, allowed the jury to hear Victim's testimony that Hatch

showed her a shoebox full of pornographic magazines and invited her to "pleasure" herself. Hatch argues that he was prejudiced when the jury heard this evidence because "[i]t painted [him] as encouraging [Victim] to engage in perversion and as inculcating an appetite for pornographic material, clearly giving the jury the impression that [he] was not only a sexual predator, but simply an awful person," causing the jury to abandon "calm and logical reasoning." Hatch also argues that by informing the jury in instruction 20 of the reason count 5 was dismissed, the court "alerted the jury to the real likelihood that Count [5] had merit, was being dismissed for purely technical reasons, and in spite of the Court's cautionary language, a reasonable juror could conclude that perhaps it should be considered as evidence of [Hatch's] character." Assuming, without deciding, that trial counsel performed deficiently, these claims fail because Hatch has not shown prejudice.

¶31   The jurors heard far more inflammatory and graphic testimony about Hatch than what they heard regarding count 5. They heard that Hatch drove Victim to a deserted area alone and had her "take off [her] clothes," after which he "licked and touched [her] vagina." The jury also heard that Hatch, on another occasion, asked Victim to "return the favor" and made her "lick his penis." The jury also heard evidence that Hatch took Victim into his bedroom, put on a pornographic movie, and told her to undress. Thus, the jury heard testimony about Hatch that was far more egregious than the testimony about the pornographic magazines. Indeed, the testimony about the shoebox full of explicit magazines was, in some ways, the least damning of all the evidence the jury heard because that evidence did not involve any sexual touching of Victim. Hatch simply cannot show that if the jury had not heard about the magazines, "there is a reasonable probability that . . . the result of the proceeding would have been different" with respect to the four counts that were not dismissed and on which he was convicted. *See Strickland*, 466 U.S. at 694.

¶32    Additionally, any risk of prejudice from the jury having heard the factual basis of count 5 was reduced through instruction 20, which directed the jury to disregard those facts and to not consider them in their deliberations. *See State v. Padilla*, 2018 UT App 108, ¶ 26, 427 P.3d 542 ("Curative instructions are ordinarily presumed on appeal to be effective.") (quotation simplified). Trial counsel further minimized any risk of prejudice when, in his closing argument, he implored the jurors not to discuss the facts related to count 5 and to try to "consciously" avoid thinking about them when rendering their verdict. Instruction 20, combined with counsel's closing argument, clearly directed the jurors to disregard anything they heard regarding count 5, which we presume they did. *See State v. Harmon*, 956 P.2d 262, 273 (Utah 1998) (stating that it is presumed that juries follow the instructions they are given unless the defendant can show that "there is an overwhelming probability that the jury [was] unable to follow the court's instruction and a strong likelihood that the effect of the evidence would be devastating to the defendant") (quotation simplified). And given the nature of the other evidence the jury heard, any potential error in the jury hearing the factual basis underlying count 5 was not "too prejudicial for [the] curative instruction[] to mitigate." *See id.* (quotation simplified).

¶33    By the same token, Hatch cannot show prejudice from the jury hearing the factually accurate explanation for why count 5 was dismissed. Especially given that trial counsel interposed his statute of limitations objection in the jury's presence, we cannot see how Hatch was prejudiced by having the jury learn that this was, indeed, the reason for count 5's dismissal. And as previously discussed, any evidence regarding count 5 was unlikely to have changed the jury's verdict on the remaining counts because the evidence properly before the jury was far more incriminating than anything the jury heard about count 5.

¶34    Ultimately, Hatch cannot show that it is "a demonstrable reality and not a speculative matter" that he was prejudiced by the jury hearing the facts underlying count 5 and the reason

count 5 was dismissed. *See State v. Nelson*, 2015 UT 62, ¶ 10, 355 P.3d 1031 (quotation simplified).

## II. Hatch's Absence

¶35   With regard to Hatch's absence from a portion of the proceedings on the morning his trial got underway, Hatch asserts that he received ineffective assistance when trial counsel failed to ensure his presence. Hatch also argues that the trial court plainly erred in not requiring his presence during those proceedings. To prevail on these claims, Hatch must show that, absent trial counsel's deficient performance or the trial court's obvious error, there was a reasonable likelihood of a more favorable result. *See State v. Ellifritz*, 835 P.2d 170, 174 (Utah Ct. App. 1992) ("When [a] defendant raises the issues of both plain error and ineffective assistance of counsel, a common standard is applicable. The common standard exists because plain error requires a showing that absent the error, there is a substantial likelihood of a more favorable outcome for defendant, and similarly, the ineffective assistance standard requires a showing that but for ineffective assistance of counsel, the result would likely have been different for defendant.") (quotation simplified).

¶36   In the present case, Hatch does not demonstrate prejudice but instead asks us to presume that he was prejudiced because his constitutional rights were violated, amounting to "structural error." But because Hatch raised this claim for the first time in a motion for a new trial, he did not preserve this claim for appeal, *State v. Fullerton*, 2018 UT 49, ¶ 49 n.15, 428 P.3d 1052, and is required therefore to establish plain error on the part of the trial court, one element of which is prejudice. And when it comes to ineffective assistance of counsel, we will not presume prejudice because it is the defendant's burden to show how counsel's deficient performance prejudiced him. This holds true even though Hatch argues that his constitutional rights were violated, as "unpreserved federal constitutional claims are not subject to a heightened review standard but are to be reviewed under our

plain error [and ineffective assistance of counsel] doctrine[s]," which require a showing of prejudice. *State v. Bond*, 2015 UT 88, ¶ 44, 361 P.3d 104. *See id*. ¶ 46 ("[E]ven federal constitutional errors so serious as to be deemed structural are subject to preservation requirements.").

¶37    The State concedes, and the record shows, that Hatch was indeed absent for the in-chambers discussion held just before trial. But the record does not support Hatch's argument that he was not present during jury selection, including the in-chambers interviews of prospective jurors.[9] Regardless of whether he was, in fact, present during jury selection, Hatch does not attempt to demonstrate that he was prejudiced.

¶38    To prevail on his claim that he was prejudiced by not being present during jury selection, Hatch must show that an "actually biased juror" sat on the jury. *See State v. King*, 2008 UT 54, ¶ 47, 190 P.3d 1283. Hatch makes no effort to show that a

_____

9. At the beginning of the proceedings in the courtroom, the jury pool was brought in and the trial court provided preliminary instructions and administered an oath. To determine if anyone in the jury pool knew anyone on the prosecution or defense team, the court had them introduce themselves to the pool. At this point, the court greeted Hatch and then proceeded with questioning the prospective jurors. There is no indication in the record that Hatch left the courtroom during this questioning. After the court's questioning, the court allowed trial counsel and the State, in chambers, to make any challenges they had to any of the prospective jurors or to bring them in for further questioning. When trial counsel began his questioning, he said, "I wanted to just state for the record that [Hatch] is in the chambers." Again, there is nothing in the record to indicate that Hatch was directed to leave or left of his own accord during this portion of jury selection. Based on our review of the record, Hatch's assertion that he was not present during jury selection is incorrect.

biased juror sat, nor is there any suggestion in the record that any of the jurors were biased. Thus, Hatch has not shown that he was prejudiced by his alleged absence from jury selection. Regarding Hatch's absence from the preliminary discussion in chambers, Hatch has likewise made no effort to show he was prejudiced, i.e., he has not proven that, had he been present during the discussion, he would have directed trial counsel to take a course of action that would have resulted in a reasonable probability of a different outcome. *See Strickland v. Washington*, 466 U.S. 668, 694 (1984). Because Hatch has not established prejudice from trial counsel's, or the trial court's, alleged error in not requiring him to be at every part of the proceedings, these claims are unavailing.

¶39    Hatch also asks us to remand this case pursuant to rule 23B of the Utah Rules of Appellate Procedure "in order to establish whether [Hatch] was purposely absented from the trial proceedings . . . as a consequence of the direction of his defense counsel." For a rule 23B motion to be granted, a defendant must meet a four-part test. "First, remand is not appropriate where the alleged facts are already in the record." *State v. Griffin*, 2015 UT 18, ¶ 18, 441 P.3d 1166. "Second, the defendant must provide allegations of fact that are not speculative." *Id*. ¶ 19. "Third, the allegations must show deficient performance. In other words, the nonspeculative facts must focus on why counsel's performance was deficient." *State v. Gunter*, 2013 UT App 140, ¶ 16, 304 P.3d 866 (quotation simplified). Fourth, "the affidavits supporting the motion must also allege facts that show the claimed prejudice suffered by the appellant as a result of the claimed deficient performance." *Id*. (quotation simplified). *See* Utah R. App. P. 23B(a). "And the proof that such acts or omissions prejudiced him must be a demonstrable reality and not a speculative matter." *State v. Nelson*, 2015 UT 62, ¶ 10, 355 P.3d 1031 (quotation simplified). If a defendant fails to meet one or more of these requirements, his motion will be denied.

¶40    In support of his rule 23B motion, Hatch provides only his own affidavit claiming that he was not present during the

preliminary discussion held in chambers and that he "was not allowed to be in Court until shortly before" the trial court greeted him on the record during jury selection. It is clear that Hatch was absent for the preliminary discussion, and we will assume, for purposes of this analysis, that Hatch was absent from jury selection as well. But Hatch's rule 23B motion fails because it does not provide nonspeculative facts that demonstrate prejudice. On the contrary, he again invites us to presume prejudice because he had a constitutional right to be present for every minute of the proceedings. But as previously discussed, because Hatch did not preserve this claim, he must show prejudice, which we will not presume. *Bond*, 2015 UT 88, ¶¶ 44, 46.

¶41    Hatch's affidavit in support of his 23B motion does not provide any nonspeculative facts suggesting prejudice. All Hatch asserts is that had he "been present during the subject proceeding and been consulted or been able to confer with his counsel about the questions and issues being discussed, different results may have come about." He also states in his affidavit that he "had many . . . questions regarding the . . . jurors which [he] would like to have explored [and he] would liked to have been able to observe them as they were individually questioned." Hatch's claim that his inability to ask questions of and observe the jurors actually harmed his defense is clearly speculative. To prevail on this claim, Hatch must show "that his counsel's actions prejudiced him because those actions allowed the seating of an actually biased juror." *King*, 2008 UT 54, ¶ 47. Hatch has not done so. He has not provided affidavits in support of his rule 23B motion that assert nonspeculative facts outside the record suggesting that a biased juror actually sat and, thus, he has not shown that he was prejudiced by being absent from any part of jury selection, if he even was absent. Hatch has likewise not shown that had he been present during the in-chambers discussion that took place prior to jury selection, he would have directed trial counsel to take a course of action that would have resulted in a different outcome. *See Strickland*, 466 U.S. at 694.

¶42 For these reasons, Hatch's claim that his constitutional rights were violated by his absence from a portion of the proceedings is unavailing. And his related rule 23B motion is denied.

### III. Merger of Count 1 and Count 2

¶43 Hatch asserts that he received ineffective assistance when trial counsel failed to move the court to merge counts 1 and 2—the counts involving Victim's claim that he both touched and licked her vagina after driving her to a deserted area. Hatch's principal brief appears to argue that, under Utah Code section 76-1-402(3), counsel should have moved for merger of the counts because aggravated sexual abuse of a child is a lesser included offense of sodomy on a child. Hatch claims that "under the facts of this case, . . . touching the genitals by any part of the body, including the tongue and of course the hands, amounting to Aggravated Sexual Abuse, can readily be construed as constituting an attempt, solicitation, or form of preparation to commit Sodomy on a Child" and thus is, "by definition, a lesser included offense."[10]

---

10. A caption in Hatch's brief states that "it was ineffective assistance of counsel in failing to move to merge counts [1] and [2], involving virtually identical conduct during a single criminal episode," but he then proceeds to argue that the offenses should be merged because aggravated sexual abuse of a child was a lesser included offense of sodomy on a child under Utah Code section 76-1-402(3). This caption actually appears to suggest an argument under subsection (1) that the counts should be merged because they were part of a "single criminal episode." Hatch also appears to advance this argument in his reply brief. But that is not the argument actually presented in Hatch's principal brief, and so we do not address it. *See Allen v. Friel*, 2008 UT 56, ¶ 8, 194 P.3d 903 ("It is well settled that issues raised by an appellant in the reply brief that were not presented in the opening brief are

(continued…)

¶44 Hatch's argument fails under subsection (3) because aggravated sexual abuse of a child is not a lesser included offense of sodomy on a child, and thus trial counsel could not be ineffective for failing to move to merge the counts under this theory. Subsection (3) states:

> A defendant may be convicted of an offense included in the offense charged but may not be convicted of both the offense charged and the included offense. An offense is so included when:
>
> (a) It is established by proof of the same or less than all the facts required to establish the commission of the offense charged; or
>
> (b) It constitutes an attempt, solicitation, conspiracy, or form of preparation to commit the offense charged or an offense otherwise included therein; or
>
> (c) It is specifically designated by a statute as a lesser included offense.

Utah Code Ann. § 76-1-402(3) (LexisNexis 2017).

¶45 A person commits aggravated sexual abuse of a child if he or she holds "a position of special trust," such as "a stepparent," and "if, *under circumstances not amounting to . . . sodomy on a child*," or attempted sodomy on a child, he or she "touches the anus, buttocks, pubic area, or genitalia of any child . . . with the intent to arouse or gratify the sexual desire of any individual." *Id*. § 76-5-404.1(1)–(2), (4)(h) (Supp. 2019) (emphasis added). In contrast, sodomy on a child is committed when a person

(…continued)
considered waived and will not be considered by the appellate court.") (quotation simplified).

"engages in any sexual act upon or with a child who is under the age of 14, involving the genitals or anus of the actor or the child and the mouth or anus of either person." *Id*. § 76-5-403.1(1) (2017). Thus, aggravated sexual abuse of a child is not a lesser included offense of sodomy on a child as a matter of simple definition.[11] The aggravated sexual abuse of a child statute specifically states that it applies in "circumstances not amounting to . . . sodomy on a child." *Id*. § 76-5-404.1(1) (Supp. 2019). Aggravated sexual abuse of a child is an alternative charge that the State can bring against a defendant.

¶46   Furthermore, even if aggravated sexual abuse of a child were a lesser-included offense of sodomy on a child, Hatch was not "convicted of both the offense charged and the included offense" as prohibited by subsection (3). *See id*. § 76-1-402(3) (2017). The State did not charge Hatch with both sodomy on a child and aggravated sexual abuse of a child for the same act, nor was he so convicted. Instead, the State charged Hatch with sodomy on a child for licking Victim's vagina and aggravated sexual abuse of a child for digital penetration with his hands. Thus, even if Hatch is correct that aggravated sexual abuse of a child is a lesser included offense of sodomy on a child, his subsection (3) argument would still be unavailing, given the two distinct acts for which Hatch was charged, and trial counsel could not be deficient for not moving the trial court for merger under this subsection. *See State v. Kelley*, 2000 UT 41, ¶ 26, 1 P.3d 546 ("Failure to raise futile objections does not constitute ineffective assistance of counsel.").

¶47   It is not until Hatch's reply brief that he argues that the counts should have merged under Utah Code section 76-1-402(1) because they were "essentially the same act under a single

---

11. Indeed, this point was conceded by Hatch in his motion for a new trial, in which he stated, regarding the "two possible tests for determining merger, Count [1] is not a lesser included offense of Count [2] and that test is inapplicable here."

criminal episode." Because he did not pursue this argument in his principal brief, but only developed it in his reply brief, we do not address it. *See Allen v. Friel*, 2008 UT 56, ¶ 8, 194 P.3d 903.

## IV. Directed Verdict or Motion to Dismiss, Count 4

¶48   Hatch argues that trial counsel was ineffective for not moving for a directed verdict and not bringing a motion to dismiss, for insufficient evidence to sustain a conviction, on count 4—the count charging him with attempted aggravated sexual abuse of a child in connection with the episode in which he locked Brother out of the house. "In evaluating whether a motion for directed verdict would be successful, this court reviews the evidence and all reasonable inferences to be drawn therefrom, and assesses whether some evidence exists from which a reasonable jury could find that the elements of the crime had been proven beyond a reasonable doubt." *State v. Millerberg*, 2018 UT App 32, ¶ 12, 414 P.3d 1106 (per curiam) (quotation simplified).

¶49   To obtain a conviction for attempted aggravated sexual abuse of a child, the State bore the burden of proving, beyond a reasonable doubt, that Hatch "engage[d] in conduct constituting a substantial step toward commission of the crime; and . . . intend[ed] to commit the crime." *See* Utah Code Ann. § 76-4-101(1) (LexisNexis 2017). *See also United States v. Resendiz-Ponce*, 549 U.S. 102, 107 (2007) ("[M]ere intent to violate a . . . criminal statute is not punishable as an attempt unless it is also accompanied by significant conduct."). Thus, the State had to prove that Hatch held "a position of special trust" as "a stepparent" and had the intent to, and took a substantial step toward, "touch[ing] the anus, buttocks, pubic area, or genitalia of [Victim]" for the purpose of "arous[ing] or gratify[ing] the sexual desire of any individual." Utah Code Ann. § 76-5-404.1(1)–(2), (4)(h) (Supp. 2019). "In order for conduct to constitute a substantial step, there must be more than mere preparation," *State v. Johnson*, 821 P.2d 1150, 1157 (Utah 1991), and the State must show that the defendant took "a tangible step

toward commission of a crime that transcends intent, yet fails to culminate in its planned accomplishment," *State v. Arave*, 2011 UT 84, ¶ 30, 268 P.3d 163 (quotation simplified).

¶50    To properly assail this verdict on the basis that it lacked sufficient evidentiary support, Hatch must show that the State failed to present enough evidence to allow a jury to conclude, beyond a reasonable doubt, that (1) his conduct constituted a substantial step toward the commission of aggravated sexual abuse of a child and (2) he intended to commit the crime. Hatch attacks the conviction only on the first ground, arguing that "it simply cannot be established based upon all inferences which may reasonably be drawn, that [he] engaged in conduct constituting a substantial step toward committing an act of Sexual Abuse of a Child." He does not argue that there was insufficient evidence to prove that he had the intent to commit the crime.[12]

¶51    We conclude there was sufficient evidence to support the jury's verdict on count 4, as concerns Hatch's conduct constituting a substantial step toward the commission of the crime. The State offered evidence that Hatch locked Brother outside the home, took Victim into the bedroom where he had Victim get undressed, laid on the bed with Victim, and began

_____

12. The closest that Hatch comes to arguing that the State presented insufficient evidence to prove his intent to commit the crime is a statement that the "evidence yields no more than an inference that perhaps [he] intended to pursue some sort of sexual activity with [Victim]," which "is total speculation." But Hatch then provides no analysis as to how the evidence did not show that he had the specific intent to commit the crime. Accordingly, we only consider whether Hatch's actions constituted a substantial step toward committing sexual abuse of a child and forgo analyzing whether there was sufficient evidence to show beyond a reasonable doubt that he intended to commit aggravated sexual abuse of a child.

playing a pornographic movie. The State also presented evidence that Hatch told Victim to get dressed and stopped the film only when Brother tried to get back into the house and was pounding on the door. The totality of the evidence transcends "mere preparation" and is sufficient evidence on which a reasonable jury could find that Hatch took a "tangible step toward" sexually abusing Victim and that he failed to complete the crime only because he was interrupted by Brother. *See Arave*, 2011 UT 84, ¶ 30 (quotation simplified).[13] Thus, trial counsel was not deficient in forgoing a motion for a directed verdict, or a motion to dismiss, because it would have been rejected by the trial court as there was "some evidence" on "which a reasonable jury could find" that Hatch had taken a substantial step toward

---

13. This case is distinguishable from *State v. Arave*, 2011 UT 84, 268 P.3d 163. In *Arave*, the defendant approached a child riding a bike on the street; stopped the child "about two feet in front of him, blocking his way"; and offered to pay the child if he would let the defendant perform oral sex on him. *Id.* ¶ 4. When the child did not respond, the defendant "apologized for 'grossing him out'" and left the child, asking him not to tell anyone about what had happened and reminding him to "'think about it, $20.'" *Id.* The defendant was then charged and convicted of attempted sodomy on a child. *Id.* ¶ 6. Our Supreme Court reversed the conviction, holding that there was insufficient evidence to show that the defendant's actions constituted a substantial step as the defendant never "trapped" the victim and "did nothing beyond what most any defendants would do when committing a crime of solicitation." *Id.* ¶ 32. Here, Hatch's actions surpass those of the defendant in *Arave*, as Hatch actually did "trap" Victim alone with him in the home and took actions far beyond merely soliciting Victim for inappropriate sexual contact when he had her remove her clothes, turned on a pornographic film, and laid on the bed with her, all of which allow a reasonable jury to conclude that Hatch took substantial steps toward sexually abusing Victim.

committing aggravated sexual abuse of a child.[14] *See State v. Montoya*, 2004 UT 5, ¶ 29, 84 P.3d 1183 (quotation simplified).

## V. Impeachment Testimony

¶52 Hatch's final argument is that the district court abused its discretion when it ruled that the trial court did not err by barring Grandfather from testifying that Victim had accused Brother of molesting her but later recanted.[15] *See State v. Squires*, 2019 UT App 113, ¶ 23, 446 P.3d 581 ("When the trial court denies a motion . . . for a new trial, we review that decision for an abuse of discretion.") (quotation simplified).

¶53 Rule 412 of the Utah Rules of Evidence "prohibits the introduction, in certain criminal cases, of 'evidence offered to prove that a victim [of sexual misconduct] engaged in other sexual behavior' or 'evidence offered to prove a victim's sexual predisposition.'" *State v. Jordan*, 2018 UT App 187, ¶ 25, 438 P.3d 862 (quoting Utah R. Evid. 412(a)(1)–(2)). "Although rule 412 prohibits the admission of any truthful evidence that involves actual physical conduct or that implies sexual contact, the rule does not reach evidence offered to prove allegedly false prior claims by the victim," because "such statements bear directly on

---

14. There may be a question as to what Hatch intended to do with Victim had he not been interrupted by Brother, but, again, Hatch's argument focused only on the substantial step element of the attempt crime and not on the intent element.

15. Hatch also argues that excluding Grandfather's testimony violated his state and federal due process rights to "present a complete defense." *See State v. Garcia*, 965 P.2d 508, 516 (Utah Ct. App. 1998) (quotation simplified). But because Hatch raised this claim for the first time in a motion for a new trial, it is not preserved, and he has not argued an exception to the preservation rule. *See supra* note 8. Accordingly, we do not address this claim.

the credibility of the purported victim in a subsequent case." *State v. Clark*, 2009 UT App 252, ¶ 20, 219 P.3d 631 (quotation simplified). "To properly introduce such evidence, however, the defendant must first 'make a threshold showing of the falsity of prior allegations by a preponderance of the evidence before he can use those allegations to impeach the accuser's testimony at trial.'" *Jordan*, 2018 UT App 187, ¶ 27 (quoting *State v. Tarrats*, 2005 UT 50, ¶ 26, 122 P.3d 581). This showing is required because

> [a] truthful prior allegation of rape carries no value whatsoever in the trial process, and its admission into evidence bears a high potential for humiliating the accuser, discouraging victims from reporting sexual crimes against them, and introducing irrelevant and collateral issues that may confuse or distract the jury. It was to avoid these very problems that rule 412 was adopted.

*Tarrats*, 2005 UT 50, ¶ 24.

¶54 Hatch did not make the required threshold showing of falsity. All Hatch presented to the trial court was an affidavit from Grandfather in which Grandfather alleged that Victim told him that Brother "tak[es] down his pants and wants [her] to play and touch his private areas," which allegation Grandfather reported to DCFS. In the affidavit, however, Grandfather did not allege that Victim recanted this allegation or that it was false. Nor did Hatch provide affidavits from a DCFS witness, or anyone else, who would testify that Victim ever made this allegation and recanted it or that it was false. When filing his motion for a new trial, Hatch again provided only Grandfather's same affidavit. This affidavit, on its own, does not satisfy the required preponderance-of-the-evidence standard, i.e., that "the existence of the fact is more probable or more likely than its nonexistence," *Morris v. Farmers Home Mutual Ins. Co.*, 500 P.2d 505, 507 (Utah 1972), because there was no evidence proffered by

Hatch that this allegation against Brother, if even made, was false or recanted by Victim. Therefore, the district court did not abuse its discretion in ruling that the trial court did not err in excluding Grandfather's testimony about the alleged false accusation.[16]

CONCLUSION

¶55 Hatch did not receive ineffective assistance of counsel when the jury was allowed to hear the factual basis of count 5 and the reason for its dismissal because he has not shown prejudice. Hatch's claim of error by the trial court or ineffective assistance of counsel for not ensuring his presence during all of the proceedings below likewise fails for lack of prejudice. Trial counsel was also not deficient in not moving the trial court to merge counts 1 and 2 under a lesser-included-offense theory, because the motion would have proven futile. Additionally, there was sufficient evidence presented to the jury to support its finding that Hatch took a substantial step toward aggravated sexual abuse of a child, and trial counsel was not ineffective for failing to move the trial court for a directed verdict, or to dismiss, on that basis. Finally, the district court did not abuse its discretion in ruling that the trial court correctly disallowed

_____

16. We wonder whether, even if the threshold showing of falsity had been made, Hatch would have been able to properly do more than simply cross-examine Victim about the previous allegations (something he was afforded the opportunity to do anyway). Rule 608(b) of the Utah Rules of Evidence, which mandates that "extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness," would seem to be a major impediment to Hatch's efforts, in this context, to call Grandfather or a DCFS witness to testify at trial. But because Hatch did not make the threshold showing of falsity in any event, we need not consider the matter further.

Grandfather from testifying about Victim's alleged false accusation because Hatch did not make the proper evidentiary showing.

¶56 Affirmed.

─────────