2025 UT App 27

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
RUBEN SAL ROYBAL,
Appellant.

Opinion
No. 20230081-CA
Filed March 6, 2025

Third District Court, Salt Lake Department
The Honorable Kara Pettit
No. 191904176

Nathalie S. Skibine, Attorney for Appellant

Derek E. Brown and Andrew Peterson, Attorneys
for Appellee

JUDGE JOHN D. LUTHY authored this Opinion, in which
JUDGES RYAN M. HARRIS and AMY J. OLIVER concurred.

LUTHY, Judge:

¶1    Ruben Sal Roybal was convicted by a jury of attempted murder, aggravated kidnapping, aggravated assault, and possession of a dangerous weapon by a restricted person, based on events involving his then-girlfriend (Girlfriend). Roybal now appeals, raising three issues. First, he asserts that the district court erred by ruling that if he asked Girlfriend at trial about violence she had committed against him, the prosecution could put on evidence of the immediate context of that violence. Second, Roybal argues that the court abused its discretion when it admitted evidence that Roybal had a prior felony conviction. Finally, Roybal challenges the court's refusal to instruct the jurors to decide both the facts and the law according to their own best understanding. Roybal has also filed a motion under rule 23B of

the Utah Rules of Appellate Procedure, requesting that we remand this case for supplementation of the record in support of an ineffective assistance of counsel claim. Because we see no error on the record before us and determine that Roybal has not met his burden under rule 23B, we deny his rule 23B motion and affirm his convictions.

## BACKGROUND[1]

¶2      Roybal and Girlfriend went out for dinner to celebrate Roybal's birthday. Driving separately, they initially arrived at one restaurant, but Roybal changed his mind. So—again driving separately—they went to another restaurant. There, Girlfriend observed that Roybal "was just off," appeared "angry," and was "very aggressive" toward a restaurant employee.

¶3      After they finished their meal, Girlfriend offered to fill Roybal's truck with gas because "it was [his] birthday[] and [she] knew he was low on gas." While Roybal's truck was being filled, two young men pulled up to the gas station. Roybal looked at them, looked at Girlfriend, and then "grabbed the . . . pump out of his truck," threw it on the ground, and stared Girlfriend down as he got in his truck and drove away. Girlfriend returned the nozzle to its holder, got in her car, and drove home.

¶4      As Girlfriend was about to turn into the parking lot of the apartment complex where she lived, she saw Roybal's truck pull up behind her. Girlfriend pulled into her parking spot, and Roybal maneuvered his truck perpendicular to her car, blocking her in. Girlfriend exited her car, and Roybal got out of his truck. Roybal then said, "You think you're going to betray me?" and

_____

1. On appeal, "we recite the facts in a light most favorable to the jury's verdict, but present conflicting evidence to the extent necessary to clarify the issues raised on appeal." *State v. Garcia-Mejia*, 2017 UT App 129, ¶ 2, 402 P.3d 82 (cleaned up).

began punching Girlfriend—who was wearing a medical boot for a broken leg—in the face with his fist. He then stabbed her in the face and neck with a knife. He also stabbed her in the abdomen while pressing her against his truck.

¶5    Hearing screaming, a male relative of Girlfriend who lived with her (Roommate) came outside and pulled Roybal off Girlfriend. A neighbor also heard the commotion and came outside. Roybal grabbed Girlfriend by the hair, got in his truck, and drove off while still holding Girlfriend by her hair alongside the truck. He drove for twenty-five to thirty yards before releasing her and driving away. Both the neighbor and another male relative of Girlfriend saw Roybal drag her down the street. Roybal was later interviewed by police and charged with several crimes.

¶6    Girlfriend, the neighbor, and Girlfriend's two male relatives, including Roommate, testified for the State at trial, relating the facts as described above. During his cross-examination of Girlfriend, Roybal's counsel (Counsel) asked her to confirm that there had been prior "physical violence" between Roybal and Girlfriend that had been "perpetrated by [Girlfriend]." The State objected. It argued that if Counsel elicited testimony from Girlfriend confirming that she had been violent toward Roybal during a past incident, that would open the door to the State introducing details of the immediate context of that event, which Roybal had recorded on video. Counsel argued that evidence that Girlfriend had been violent with Roybal in the past would support Roybal's self-defense theory and that because Counsel had not asked about a specific incident, he would not be "open[ing] the door to any particular occasion." Counsel also stated, "If it opens the door to each and every incident of her engaging in violence with my client, I'm not going to get into it, because we're going to spend a lot of time on something that I think ultimately is not going to be germane to the core of this case." The court agreed with the State that asking about past violence perpetrated by Girlfriend would open the door to the

State presenting "more specifics about [that] fact," including by showing the video that had been identified, which showed Roybal and Girlfriend's interactions in the roughly twenty-six minutes immediately following Girlfriend's "physical violence." Counsel then abandoned that line of questioning.

¶7 After the State rested and anticipating that Roybal would testify in his defense, Counsel, the prosecutor, and the court discussed the admissibility of the fact that Roybal had a previous felony conviction. Counsel objected to its admission, arguing that because the circumstances of the prior conviction were similar to those of this case, admission of the details of the prior felony would be unfairly prejudicial under rule 403 of the Utah Rules of Evidence. The prosecutor responded by arguing that the fact of the prior felony was admissible under rule 609 of the Utah Rules of Evidence, and he represented that he would ask Roybal only whether he had previously been convicted of a felony and that if Roybal answered in the affirmative, he (the prosecutor) would not ask any more questions about it. The court ruled that under rule 609, the prosecutor could elicit from Roybal that he had a prior felony conviction but that the prosecutor could not "ask what it was for or the facts behind it."

¶8 Roybal then testified, providing a different version of the events at issue. He testified that he "just wanted to get away" from Girlfriend throughout the birthday dinner. He also stated that he had wanted to break up with her and, therefore, had followed her home to do just that. He explained that when he tried to break up with Girlfriend in the parking lot of her apartment complex, she began "yelling, screaming, and hitting" him; "wrestling [him] around"; and "kicking" him in his "belly," "chest," and "legs" with her booted leg. Roybal said that as he tried to escape and climb into his truck, Roommate grabbed him. Roybal testified that he saw that Roommate was holding a knife, so he disarmed Roommate using a "Maka Magra" martial arts maneuver and then used the knife to "poke" Girlfriend several times. Roybal

explained that he again tried to escape but Girlfriend clung to him as he drove off, finally letting go after some distance. Under examination by Counsel, Roybal acknowledged that he had a prior felony conviction. Under cross-examination by the State, he acknowledged that his "poke[s]" could also be characterized as "stab[s]," that he did not report Roommate and Girlfriend's purported attack on him to police, and that he did not disclose their purported attack when detectives interviewed him either.

¶9    After trial, the jury found Roybal guilty on all counts, and Roybal now appeals. With his appeal, Roybal has filed a motion for a remand under rule 23B of the Utah Rules of Appellate Procedure, the details of which we include below.

## ISSUES AND STANDARDS OF REVIEW

¶10    Relying on rule 403 of the Utah Rules of Evidence, Roybal asserts that the district court "erred when it ruled that the details of any previous violence by [Girlfriend] against Roybal would be admissible if [Counsel] questioned [Girlfriend] about her previous violence against Roybal." "We review the [district] court's decision to admit or exclude evidence under rule 403 of the Utah Rules of Evidence for an abuse of discretion."[2] *In re Z.M.*, 2014 UT App 118, ¶ 4, 327 P.3d 1220.

---

2. The State contends that Roybal did not preserve a rule 403 argument for review. Because "the merits of [this] claim can easily be resolved in favor of the party asserting that the claim was not preserved," we opt to address the merits without resolving the preservation issue. *See State v. Kitches*, 2021 UT App 24, ¶ 28, 484 P.3d 415 (cleaned up). We note, however, that the only rule 403 basis for excluding the video that Roybal identifies in his principal brief is that its admission would have been a waste of time. *See generally* Utah R. Evid. 403 ("The court may exclude relevant

(continued…)

¶11 Next, Roybal argues that the district court "erred when it admitted [his] previous felony conviction." We review the district court's decision to admit evidence of a prior felony conviction under rule 609 of the Utah Rules of Evidence for an abuse of discretion.[3] *State v. Levin*, 2004 UT App 396, ¶¶ 8, 25, 101 P.3d 846, *rev'd on other grounds*, 2006 UT 50, 144 P.3d 1096.

¶12 Roybal also challenges the district court's refusal to instruct the jury to decide both the facts and the law according to its own best understanding. "Claims of erroneous jury instructions present questions of law that we review for correctness." *State v. Lee*, 2014 UT App 4, ¶ 7, 318 P.3d 1164 (cleaned up).

¶13 In addition to his immediate claims on appeal, Roybal has filed a motion under rule 23B of the Utah Rules of Appellate Procedure, requesting that we remand this case for supplementation of the record in support of an ineffective assistance of counsel claim. "A remand under rule 23B will only

---

evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."). We therefore limit our analysis to that argument. *See Brown v. Glover*, 2000 UT 89, ¶ 23, 16 P.3d 540 ("[I]ssues . . . not presented in [an appellant's] opening brief are considered waived and will not be considered by the appellate court.").

3. The State asserts that to the extent the district court abused its discretion in admitting evidence of Roybal's prior conviction, Roybal invited the error, thereby precluding appellate review. As with the previous issue, because the merits of this issue can easily be resolved in favor of the State, we opt to address the merits without resolving the invited error issue. *Cf. Kitches*, 2021 UT App 24, ¶ 28.

be granted upon a nonspeculative allegation of facts, not fully appearing in the record on appeal, which, if true, could support a determination that counsel was ineffective." *Id.* ¶ 5 (cleaned up).

## ANALYSIS

### I. Girlfriend's Prior Violence Against Roybal

¶14    Relying on rule 403 of the Utah Rules of Evidence, Roybal challenges the district court's ruling that inquiring into past incidents of violence perpetrated by Girlfriend against him would "open the door" to "details" related to at least one such incident, for which there was a roughly twenty-six-minute video showing not the physical altercation portion of the incident but Roybal refusing to leave Girlfriend's car after she had hit him and Girlfriend acknowledging that she had "laid hands on" Roybal. Roybal argues that "[e]liciting the fact that [Girlfriend] had been violent with Roybal should not have opened the door to a video . . . that showed a verbal argument between Roybal and [Girlfriend] about getting out of the car" because showing the video would have entailed "wading into unnecessary details and wasting time." We disagree.

¶15    The immediate context of any prior violence perpetrated by Girlfriend against Roybal would be highly probative of the extent to which such prior violence actually supported Roybal's self-defense theory. The video showing the latter portion of the one prior incident that had been identified was roughly twenty-six minutes long, and the trial lasted three days. In light of these facts, we see no abuse of discretion in the district court's apparent determination that any arguable waste of time caused by showing the video would not substantially outweigh its probative value.

## II. Roybal's Prior Felony Conviction

¶16 Roybal next asserts that the district court abused its discretion when it allowed the State to introduce evidence of his status as a convicted felon. Assuming (without deciding) that the court abused its discretion, we hold that Roybal was not prejudiced by the admission of this fact. *See State v. Crippen*, 2016 UT App 152, ¶ 23, 380 P.3d 18 ("We will not disturb a trial court's ruling [on the admissibility of evidence] unless the appealing party establishes an abuse of discretion resulting in prejudice." (cleaned up)).

¶17 In *State v. Powell*, 2007 UT 9, 154 P.3d 788, our supreme court held that the defendant was not "unduly prejudice[d]" by evidence of his prior conviction. *Id.* ¶ 44. There, as here, "[t]he jury knew only that [the defendant] had been convicted [previously] of a single felony," and it "did not know the nature of the crime or any of the details." *Id.* Also in that case, as here, there was "significant evidence" of the defendant's guilt. *Id.* In light of those facts, the court in *Powell* held that it was "unlikely that reference to a single, unnamed felony conviction so prejudiced the jury against [the defendant] that it altered the outcome of the trial." *Id.* The similarities between this case and *Powell* support a conclusion like the one in *Powell*—that admission of the bare fact that Roybal had a prior felony conviction did not prejudice Roybal.

¶18 This conclusion is bolstered here by the degree to which Roybal's testimony was inherently implausible all on its own. For example, according to Roybal, he was able to disarm Roommate using a martial arts technique, but he thought it necessary to "poke" Girlfriend—whose only weapon was a medical boot—multiple times in the neck and face with a knife instead of using his martial arts training to defend himself. He testified that he "just wanted to get away from [Girlfriend]" throughout the birthday dinner, yet he followed her to her apartment after dinner. Although he admitted that he stabbed Girlfriend several

times, he claimed that she still had the strength—and desire—to cling to his arm as he drove away. And even though he maintained that Roommate and Girlfriend's attack was violent enough that he had to stab Girlfriend in self-defense, he never reported the purported attack to police and did not disclose it when detectives interviewed him. The implausibility of Roybal's testimony undermined his credibility to such an extent that any additional erosion of credibility engendered by the solitary fact that he had a prior felony conviction was marginal at best.

¶19 For the foregoing reasons, regardless of whether the district court abused its discretion in admitting evidence of the prior conviction, Roybal was not prejudiced by its admission.

### III. Instruction on Jury Nullification

¶20 Roybal also contends that the district court erred as a matter of law when it declined to instruct the jury that it could decide for itself both the law and the facts. But both the United States Supreme Court and the Utah Supreme Court have held that while juries are to determine the facts, they are to be instructed by the trial court on the law and to follow the law. *See United States v. Gaudin*, 515 U.S. 506, 513 (1995) ("In criminal cases, as in civil, . . . the judge must be permitted to instruct the jury on the law and to insist that the jury follow his instructions."); *State v. Palmer*, 2009 UT 55, ¶ 14, 220 P.3d 1198 ("It is the role of the judge to instruct the jury on the law and to insist that the jury follow his or her instructions. It is the role of the jury to find facts and apply them to the judge's instructions on the law." (cleaned up)). The district court therefore did not err by denying Roybal's requested instruction to the contrary.[4]

---

4. Roybal asserts a claim of cumulative error. We have concluded on the one issue where we presumed error that there was no prejudice to Roybal. On the other two issues raised by Roybal, we

(continued…)

## IV. Rule 23B Motion

¶21   Finally, Roybal has filed a motion under rule 23B of the Utah Rules of Appellate Procedure requesting a remand to supplement the record in support of an ineffective assistance of counsel claim. Specifically, he wishes to add to the record the "video showing an argument between [Girlfriend] and Roybal" wherein Girlfriend acknowledges that she struck Roybal after he refused to leave her car. Roybal asserts that he was provided ineffective assistance because Counsel "opted not to open the door to the video and the jury did not see the video." He contends that "it was unreasonable for [C]ounsel to think that the video was not exonerating and helpful to Roybal." We are not convinced.

¶22   In order to merit a rule 23B remand, the allegations in support of the motion "must show deficient performance." *State v. Hatch*, 2019 UT App 203, ¶ 39, 455 P.3d 1103 (cleaned up). "To demonstrate that counsel performed deficiently, the defendant must overcome the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *State v. Wright*, 2021 UT App 7, ¶ 53, 481 P.3d 479 (cleaned up). "And decisions as to what witnesses to call, what objections to make, and by and large, what defenses to interpose, are generally left to the professional judgement of counsel." *Id.* (cleaned up).

¶23   Here, there are multiple reasons reasonable counsel would not have wanted the video or other evidence of the identified incident being presented to the jury, even though neither side

---

have concluded that there was no error. Roybal's claim of cumulative error therefore fails. *See State v. Torres-Orellana*, 2021 UT App 74, ¶ 30 n.11, 493 P.3d 711 (holding that where there was "no other error with which to cumulate [t]rial [c]ounsel's presumed . . . errors," which had already been deemed non-prejudicial, "the cumulative error doctrine . . . [did] not apply"), *aff'd*, 2024 UT 46, 562 P.3d 706.

disputes that the video includes an admission by Girlfriend that she had just hit Roybal. The video—which records part of an incident that occurred only ten days before the crimes in this case—also shows (1) Girlfriend pleading with Roybal to leave her car and him refusing to do so for nearly half an hour, (2) Girlfriend characterizing Roybal as a "control freak" who had "violated [her] privacy so many times" and was now engaged in "domestic violence" and seeking to "dominate" and "control" her, (3) Girlfriend asserting that "this [was] the third time" she had called the police on him, (4) Girlfriend claiming that Roybal had been violent with another woman in the past, (5) Girlfriend telling Roybal that her "heart [was] telling [her] to get away from" him and that he was "nothing but danger," and (6) Girlfriend recounting that she had just asked him "over and over to get out of [her] presence so [she could] go calm down" but he had "refused" and, instead, "pushed [her] to the point where [she had] laid hands on [him]."

¶24    A reasonable attorney could decide that even if this video established that Girlfriend had previously "laid hands on" Roybal and he had not immediately retaliated physically, the further context would still harm Roybal's theory of self-defense and cut against his story at trial—namely, that he wanted to end the relationship but Girlfriend would not let him go. And this is true even if Roybal had been able to obtain—as he claims would have been possible under rule 404(b) of the Utah Rules of Evidence— redaction of the portions of the video that "include[] talk of [him] being violent with another woman in the past."

¶25    Because there are good reasons reasonable counsel would not have wanted the video shown to the jury, Counsel's decision not to seek its admission was not deficient performance. We therefore deny Roybal's motion for a remand.

CONCLUSION

¶26    The district court did not abuse its discretion by ruling that Roybal's inquiry into past incidents of violence perpetrated by Girlfriend against him would open the door to admission of a video showing a portion of one such incident. Roybal was not prejudiced by admission of the bare fact that he had a prior felony conviction. The court did not err by declining to instruct the jury that it could decide for itself both the law and the facts. And Roybal has failed to meet his burden to merit a remand under rule 23B of the Utah Rules of Appellate Procedure. Accordingly, we deny his rule 23B motion and affirm his convictions.

———